STATE v. THERON SHIPMAN, Appellant.—No. 39340.—189 S. W. (2d) 273.

Division Two, September 4, 1945.

*Omer E. Brown* and *L. L. Collins* for appellant.

*J. E. Taylor*, Attorney General, and *B. Richards Creech*, Assistant Attorney General, for respondent.

LEEDY, J.—Defendant was charged by an information filed in the Christian Circuit Court with the crime of burglary in the second degree in having on or about April 18, 1943, broken into the grocery store of Earnest Moore with the intent to commit larceny therein. The case was transferred on change of venue to the Greene Circuit Court, where, in Division No. 2 thereof, he was convicted, and sentenced to two years' imprisonment in the penitentiary, in accordance with the verdict.

The testimony adduced on the trial showed that on the Saturday night in question the grocery store of Earnest Moore, located on the Northeast corner of the public square in Ozark, was forcibly broken into. Entry was effected by breaking a pane of glass in the east or side door, and unlocking said door. There was blood at the door, and a trail of blood that led into the store, and up to the cash register. There was blood as well as smeared finger prints on the cash register, and on the counter beside it. There were traces of blood "all around the building"—inside and out—and in the street and on the sidewalks. A rock was found at the store which had blood on it. Moore had locked the doors when he closed his store that night, and he had left a light burning. Shortly after midnight it was discovered that the place had been broken into. The night watchman had passed the store several times earlier that night, and he found the doors closed. Moore testified that, so far as he could tell, no money or property had been taken.

A highway patrolman arrived on the scene about 8:30 A. M., and he spent several hours in an investigation. The evidence shows that he, in company with the sheriff, a deputy and the marshal, traced spots of blood to the Shipman residence about a mile from town where defendant lived with his father and mother. There they found a "pool of blood" by the gate, and blood on the walk and porch. The officers found defendant in bed. It was then about 2 P. M. He was not intoxicated at that time. The officers told him they wanted to talk to him, and for him to go with them. He insisted he would talk to them there. All the while he remained in bed with his hand under the cover. When directed to remove the cover, he refused, and the patrolman pulled it back, and it was discovered that there was blood on his hand. His right hand had been cut. There was blood on his trousers. He explained that he had hurt his hand on some milk bottles. He was taken to the sheriff's office, and shown the glass

and rock found at the store, and he made a written statement (in his own handwriting) in which he stated that as he passed the store he "stumbled on a rock, it made me mad. I picked it up and slung it through the window of the rear door, there was a light shining in the store. When I seen what I had done I went into the store, looked around and then tried to open the cash register. I didn't get anything out of the store. I came outside and then went straight home."

The statement was taken to troop headquarters at Springfield where it was typed and the typed copy signed by defendant. The night watchman testified that he saw defendant on the night in question, but prior to the time the store was entered; that defendant was drunk at the time, but that he seemed "to be able to know what he was doing—getting around, and so on;" that he threatened to lock him up if he didn't go home, and, in fact, started to take him to the "cooler," but released him on defendant's promise to go home.

Defendant, 22 years of age, a high school graduate, and recently discharged from the army because of tuberculosis, did not expressly deny the breaking and entering, but testified he was drunk, and did not remember anything about it; that if he did so, it was not with the intention of stealing anything. He further testified he did not remember when he went home, or what time it was, nor what he did after he got home. His parents testified that he got home about 1 A. M., and that he was in a highly intoxicated condition as a result of which "he pulled the telephone from the wall, kicked over a stove, went out on the back porch and broke some fruit jars," and when they finally got him to bed, he was found to be cut by glass and bleeding profusely. Defendant also called two character witnesses in his behalf.

The first (and what appears to be the principal) ground for reversal is an attack upon the sufficiency of the evidence, defendant's contention being that there was no evidence of an intent on his part to commit burglary or larceny. This upon the theory that at the time he broke into and entered the store he was so intoxicated that he was incapable of entertaining an intent to commit larceny therein. The two cases cited in support of this proposition are Armstrong v. Winfrey, 61 Mo. 354, and Bowers v. Walker, 192 Mo. App. 230, 182 S. W. 116, neither of which involved any question of intoxication. We have held many times that voluntary drunkenness of an accused is no excuse for the commission of crime. See 9 West's Mo. Digest, Criminal Law, Sec. 53. In the recent case of State v. Pinski, (Mo.), 163 S. W. (2d) 785 it was said: "Broadly speaking, voluntary intoxication, regardless of the subject's intellect, is not a defense to a criminal charge and has no bearing on it except in certain instances not involved here." Our holdings on the precise question here involved (voluntary intoxication as precluding one from entertaining the specific intent constituting an essential element of the crime with which accused is charged) appear to represent a minority view.

See 22 C. J. S., Criminal Law, secs. 66-68, pp. 130-133. In such cases we have said that voluntary drunkenness ■■■ cannot be considered in determining whether the accused had the specific criminal intent charged. State v. Jordan, 285 Mo. 62, 225 S. W. 905; State v. Comer, 296 Mo. 1, 247 S. W. 179.

■ The information, drawn under Sec. 4440, R. S. '39, (Sec. 4440, Mo. R. S. A.) charges a breaking and entering with intent to commit larceny. Under said section the intent is an essential element of the offense, and must be established by the evidence beyond a reasonable doubt. In the light of the evidence, including defendant's confession, it cannot be doubted that the breaking and entering were unauthorized and wrongful, so that the offense was complete if done, with the intent to commit larceny, as charged. Such intent "may, and generally must, be proved by circumstantial evidence, for as a rule it is not susceptible of direct proof." 12 C. J. S., Burglary, sec. 55, p. 731. Consummation of the intent is not necessary to complete the crime of burglary. "If a person breaks and enters a house intending to steal, he is not exonerated from the commission of burglary merely because he did not steal anything or because he was frightened away before he carried out his intent . . . " 9 Am. Jur., Burglary, sec. 27, pp. 254-255.

In determining the sufficiency of the state's case, neither the trial court nor this court on appeal would be at liberty to ignore the circumstantial evidence on the question of intent as developed by the state's proof, and to treat as true or binding the countervailing oral testimony of defendant and other members of his family touching his inebriated condition. We hold that the question of the intent with which defendant broke and entered was clearly one for the jury, when considered in the light of the facts and circumstances in evidence.

■■ The motion for new trial complains of the prosecuting attorney's argument, but the bill of exceptions fails to incorporate said argument, or any part of the same. The grounds of the motion for new trial do not prove themselves. We find no error in the assignment that the cross-examination of defendant was improper because it "went beyond defendant's examination in chief." The offending questions sought to elicit the fact that defendant had been previously convicted of a felony, a fact which defendant at first denied, and then admitted. A defendant may be cross-examined concerning prior convictions notwithstanding he was not interrogated on that point during his examination in chief. State v. Bagby, 338 Mo. 951, 93 S. W. (2d) 241.

■ Instruction "A" is assailed as "misleading and confusing and assumes as true the very facts to be found by the jury." It is not pointed out wherein it is misleading or confusing, nor what facts

are assumed. The assignment therefore presents nothing for review. State v. Breeden (Mo.), 180 S. W. (2d) 684.

■ The following proceedings were had, out of which defendant assigns error:

"The jury, after hearing all of the evidence introduced in the trial of this cause, the instructions given by the Court and the argument of counsel, both for the plaintiff and defendant, and after retiring to the jury room to consider of their verdict, at their request were brought into the Court Room and the Foreman of the jury advised the Court that the jury wanted to know whether they could recommend a parole in case they convicted the defendant; whereupon the Court asked counsel for the State and the defense if there were any objections to the Court answering the question asked by the Foreman of the jury, to which counsel replied 'No'; and thereupon the Court addressed the jury as follows: 'The question of whether leniency should be granted to a convicted person is a question which is presented to the Parole Board and not to the jury, and in considering an application for parole the Parole Board frequently takes into consideration matters which are not in evidence at the trial.'

"And thereupon counsel for defense requested the Court to also tell the jury that the Parole Board would not be bound by a recommendation of the jury, and thereupon the Court addressed the jury as follows: 'Gentlemen, while you are free to make a recommendation, and it would be considered by the Board, the Board is not in anyway bound to follow that recommendation.'" In the first place, and on the merits, we fail to see how any prejudice could have resulted to defendant. Besides, the court acted with the consent of counsel on both sides, so that defendant is in no position to predicate error thereon. State v. Ackermann, 315 Mo. 219, 285 S. W. 739, is in this respect practically on "all fours" with the case at ■ bar.

Other errors are assigned, but as they are not preserved by the motion for new trial, they are not open to review. The defendant had a fair trial. The punishment assessed was the minimum. The judgment should be, and it is affirmed. All concur.