STATE of Missouri, Respondent,

v.

Percy POWELL, Appellant.

No. 48953.

Supreme Court of Missouri.

Division No. 1.

June 11, 1962.

Richard L. Hughes, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Eugene G. Bushmann, Asst. Atty. Gen., Jefferson City, for respondent.

DALTON, Presiding Judge.

This is an appeal from a conviction of burglary in the first degree and a sentence of 10 years' imprisonment in the state penitentiary. See Sections 560.040 (Laws 1957, p. 374) and 560.095 RSMo 1959, V.A.M.S. The indictment charged the offense under the Habitual Criminal Statute, Sec. 556.280 (Laws 1959, S.B. No. 117). Five previous felony convictions were alleged, shown and found by the trial judge. The punishment was accordingly fixed by the court. Section 556.280 RSMo 1959, V.A.M.S.

The indictment in question, in part, charged: "That Percy Powell in the City of St. Louis, on the 11th day of November, 1960, with force and arms, into a certain dwelling house and building of the

Catholic High School Association of the Archdiocese of St. Louis, Missouri, a corporation, said building known as St. Teresa's Convent, in the care and custody of Rev. H. J. Roberts, Pastor of St. Teresa's Catholic Church, said convent building situated at No. 2413 North Grand Boulevard, there situate and being and in which said dwelling house and building there was a human being, * * * forcibly did break and enter, by then and there * * * breaking the outer door of said dwelling house and building with the felonious intent then and there and thereby * * * to steal, take and carry away certain goods, chattels and personal property in the said dwelling house and building then and there kept and deposited therein, * * *."

While the assignment of error is not in proper form, it is apparent from appellant's brief that one of the chief issues sought to be raised on this appeal is whether there was substantial evidence to support a finding that the breaking and entering of the building in question was made "with the felonious intent then and there to steal therein."

The defendant offered no evidence and only the one factual issue of the charge is questioned on this appeal. Appellant insists that the testimony of the State's witnesses "clearly negates any 'intent to steal' on the part of this defendant."

A number of Catholic nuns, members of an order known as "Sisters of St. Joseph," taught in the parochial schools in St. Teresa's Parish and resided in the building known as St. Teresa's Convent. Father Harry Roberts, the Pastor of St. Teresa's Church, had the care and custody of the convent building.

The main front entrance of the convent building, located at 2413 North Grand Boulevard, consisted of outside wooden double doors which were two and one-half inches thick. About three feet back from the outside doors was another set of double doors, panel doors, with glass windows in the top half. On the evening in question, each set of doors was closed and secured by three sets of locks. Sister Theresa Ann was the first to come down on the evening of November 10, 1960, for the night services, prior to retiring, and she closed and locked the doors with a total of six locks.

The outer doors were secured first by an ordinary latch which locks when you close the doors. There was also "a lock at the top, which closes with a chain, about halfway down, and the next lock is a chain and at the bottom there is a lock that is pushed down into the floor like" from the right-hand door. "The inner door has a chain like the outside door, and then it has a lock with a chain, and then it has a night lock."

Sister Mary Agnes, who resided in the convent building, had authority and supervision over the other members of the order. The sisters had retired about 10 p. m. on the evening of November 10, 1960, and, about 2 a. m. the following morning, Sister Mary Agnes was awakened by one of the sisters who reported a noise, stating she had heard it approximately ten minutes prior to reporting it. She asked Sister Mary Agnes to come into her room to see if she could determine if the noise was at the convent or on Grand Avenue. Sister Mary Agnes got up and went to the room of the complaining sister and waited some five minutes, but without hearing anything, so returned to her bed and, shortly thereafter, heard the crashing of glass and she promptly telephoned to the police.

Two police officers from the Fifth District received the call from St. Teresa's Convent about 2:15 a. m., November 11, 1960, and immediately proceeded to that place. There they noticed that the front doors were open and so they went inside the convent. One of them first saw defendant standing against the wall. The other officer first saw defendant as he was coming out of an ante-room inside the

building, the first room the officers entered. Defendant, a "colored man," was immediately arrested and removed from the building. No burglary tools were discovered, no bag or anything to carry personal property in was located, nor did they find any other person or automobile about the premises. Apparently the defendant was acting alone. He had been drinking.

In the ante-room where defendant was arrested, the officers saw silver, a couple of chairs and a piano. The officers also observed the two outside wooden doors with a hallway leading into a little vestibule and then two more doors, the top parts of which were made of glass. The glass was broken out of one of these inside doors. The officers observed that the locks had been pushed off the two outside wooden storm doors, the chain lock was off and the other locks had been forced open. The plate glass window in the upper part of one of the inner doors had apparently been broken by a rock, since the officers found a rock inside the building. When asked about breaking into the place, the defendant kept saying, "I am glad I did it," that was the only statement he made. One of the officers held the defendant prisoner while the other continued the search of the building, but no other intruder was found.

The Catholic sisters who testified could not identify the defendant. They only saw the police removing a "colored man" from the convent building.

Other evidence tended to show that the first floor of the convent building was separated into several rooms or divisions with doors between the three main divisions. These doors were not locked. In one of the rooms there were portiers, a table, four chairs, a piano, a piano bench, a few other benches and a few other articles. In another room, an ordinary living room, there was a divan, two chairs and a television. In the chapel the items of value included the sacred vessels, such as the

chalice, the ciborium and the monstrance. The chalice is a silver cup, goldplated; the ciborium is a goldplated cup that holds the host that is used at communions; and the monstrance is a metal frame, also goldplated, which is used at benedictions. The value of the three items would amount to around $1000, approximately. Some other witnesses placed the value at $300. There was evidence that these items would be difficult to sell. The statues and other small items in the little parlor, the first room as you enter the convent, were of no great value, perhaps five or seven dollars. They were made of plaster of paris. The statues would be material to the sacred vessels and the blessed sacrament, which were kept in the chapel. No property was missing from the convent after defendant was arrested and removed from the building. The locks on the inner double doors were not broken because the glass had been broken out of one of the doors and it was possible for one to reach in and open the several locks.

At the close of the State's case defendant moved for a judgment of acquittal which was considered by the court and overruled. As stated, defendant offered no evidence.

Appellant's theory that no case was made for the jury is, as stated, based upon his conclusion that the testimony of the State's witnesses "clearly negates any 'intent to steal' on the part of this defendant." Appellant argues that had he intended to steal anything he would have entered the building stealthily and at its weakest point. This argument is based upon the testimony of Father Roberts that the rear and side entrances of the convent were not nearly so secure and difficult of access as the front of the building. Appellant neglects to point out that there is no evidence that the defendant knew how the rear and side entrances of the convent were protected, nor is there any evidence to show that defendant knew the building was occupied as a home for the Sisters of St. Joseph, who were teaching in the

parochial schools. Since entrance was attempted to be made at about 2 a. m., there is no evidence tending to show that it was particularly important to defendant that the entrance be made "stealthily", because there was no evidence that he knew the building was occupied.

Appellant further argues that had the defendant intended to steal anything he would have come prepared to break in by means of tools and equipment necessary for a quiet breaking and entering; and that, if defendant intended to steal any of the bulky contents of the building, he would have come prepared with some means of carrying the loot away. Appellant argues that ordinary human experience demonstrates that defendant's forcible entry of the building at its strongest point of defense and the breaking of a glass panel out of one of the inner doors, which produced a great noise and commotion, show that the entrance was not made with any intent to steal. Appellant further argues that since no burglary tools and no bag for carrying equipment were found, and since the type of property in the building was of such character that it would not have been valuable to defendant had he obtained it, no intent to steal was shown. Of course, there is no evidence that defendant knew what particular type of property was in the building at the particular time, or what money, jewelry and other items of value could be obtained therein.

▮ While it was necessary for the State to produce evidence from which the jury could find beyond a reasonable doubt that at the time the defendant broke and entered the building he did so "with the felonious intent then and there to steal therein," as submitted by the State's Instruction 1, this proof could be made by circumstantial evidence. "The intent with which certain acts are done may be found, and frequently can only be found, from the attendant circumstances and must ordinarily be inferred from the facts" in evidence. State v. Whitaker, Mo.Sup., 275 S.W.2d 316, 319[5–9]; State v. Lugar, Mo. Sup., 84 S.W.2d 614, 616[1, 2]. It would seem that defendant would not have made the effort to break through two sets of doors secured by six locks unless he intended to profit thereby to some extent and in some manner, and the jury could well find from the facts shown that defendant broke and entered with an intent to steal therein. No lawful motive or purpose was shown to otherwise explain defendant's action. The jury could, therefore, infer and find from the facts shown that the breaking and entering were committed with the intent to steal. State v. Parks, Mo.Sup., 336 S.W.2d 369, 370[2, 3]; State v. Lugar, supra, 84 S.W.2d 614, 616[1, 2]. Consummation of the intent is not necessary to complete the crime of burglary. State v. Farris, Mo.Sup., 243 S.W.2d 983, 985[1–2]; State v. Shipman, 354 Mo. 265, 189 S.W.2d 273, 275[2, 4]. No authorities are cited in support of appellant's view. There is only a reference to the statute upon which the prosecution was based, to wit: Section 560.040 RSMo 1959, V.A.M.S. A case was clearly made for the jury and the assignment of error must be overruled.

Appellant further argues that the court erred in overruling the objection made by defendant's counsel to certain comments made by the assistant circuit attorney in his jury argument, which comments appellant construes to be comments on defendant's failure to testify in his own behalf. See Section 546.270 RSMo 1959, V.A.M.S.; Art. I, Sec. 19, Constitution of Missouri 1945, V.A.M.S. Only portions of the argument appear in the transcript. State's counsel in his closing argument stated: "I ask you ladies and gentlemen of the jury to take all the instructions to your jury room. Read all the instructions. Analyze the entire—all of the entire instructions in conjunction with the evidence that you have received, and based upon that, based upon that, I have no question in my mind what your final analysis will

be. I say this because the State's evidence is unrefuted, it is undisputed, and it is undenied."

■ There can be no question but that it is error to allude either directly or indirectly to a defendant's failure to testify. State v. Hepperman, 349 Mo. 681, 162 S.W.2d 878, 886. Appellant however admits that, in accordance with the decisions of this court, it is not error per se for a prosecuting attorney to tell a jury that there is no "dispute" as to the evidence; nor is it error per se for a prosecuting attorney to tell the jury that the State's evidence is "unrefuted"; nor is it error per 'se for the prosecuting attorney to tell the jury that the State's evidence is "undenied." Appellant's theory is that "the use of all of these words in one alliterative phrase cannot help but call the attention of the jury to the fact that the accused did not testify." Appellant relies particularly on State v. Lindner, Mo.Sup., 282 S.W.2d 547, 550, where the court said that the ultimate test of whether the statutory prohibition had been violated was "whether the jury's attention was called to the fact that the accused did not testify." On its facts, that case is clearly distinguishable from the present case. In State v. Hayzlett, Mo.Sup., 265 S.W.2d 321, 323 [3, 4], the court pointed out that "the key words of the statute * * * are 'accused' and 'testify,' * * *." The same rule is quoted in State v. Lindner, supra.

■ We think the argument in this case of which appellant now complains falls within the purview of those cases which permit the prosecuting attorney to discuss the evidence in general and refer to the failure of the defense as a whole to combat the facts adduced by the State tending to prove the guilt of the defendant. State v. Hayzlett, supra, 265 S.W.2d 321, 324 [3, 4]; State v. Spradlin, 363 Mo. 940, 254 S.W.2d 660, 662[5]; State v. Murray, Mo.Sup., 280 S.W.2d 809, 811[3–5]; State v. Varner, Mo.Sup., 329 S.W.2d 623, 633

[18]; State v. Hardy, 365 Mo. 107, 276 S.W.2d 90, 95[8, 9]. In the Hardy case this court pointed out that it had "consistently held that it was not a violation of the statute to state that evidence was uncontradicted, undisputed or uncontroverted." The assignment must be overruled.

Appellant further contends that the court erred in sustaining the assistant circuit attorney's objection to the argument of defendant's counsel concerning the time involved in the alleged "break-in" and when so doing also erred by commenting on the evidence. The record shows that defendant's counsel undertook to argue to the jury that "he (defendant) breaks down the front door. It takes him fifteen minutes to break that door, fifteen minutes to break down that door. He was breaking that door for fifteen minutes." An objection was made on the ground that there was no evidence that fifteen minutes was so used. The court sustained the objection by the words: "There is no evidence that fifteen minutes was devoted to that, and I sustain the objection that the argument is outside of the record."

The argument of defendant's counsel was clearly and completely outside the testimony in the record. The testimony, as hereinbefore set out, shows that one of the sisters had heard a noise and did not know whether it was at the convent building or on Grand Avenue. Some ten minutes later she notified the superior of the home, who visited her room and waited five minutes, but heard nothing and returned to her own room and again retired. Thereupon she heard the breaking of glass and telephoned the police. Sister Mary Agnes testified: " * * * the Sister had heard it approximately ten minutes prior to her coming to me * * *."

■ The court did not err in sustaining the objection and there was no comment on the evidence, since there was no evidence to the effect that fifteen minutes was devoted to the "break-in." See State

v. Van Horn, Mo.Sup., 288 S.W.2d 919, 921, 922[7–9]; State v. Florian, 355 Mo. 1169, 200 S.W.2d 64, 68[9–10]. Further, the trial court had wide discretion in determining the latitude permitted counsel in misquoting the evidence and the trial court reasonably required counsel to confine his argument to facts shown by the evidence. State v. Van Horn, supra; State v. Florian, supra.

Appellant further contends that "The court erred in allowing the Assistant Circuit Attorney to equate the tranquillity of the City with the guilt of the Defendant", citing State v. Laster, 365 Mo. 1076, 293 S.W.2d 300. Appellant contends that the assistant circuit attorney's argument "gave the jury a roving commission to find defendant guilty not only if they found him guilty in the light of the evidence as presented, but also if they felt that by sending the defendant to the penitentiary they would be contributing to the diminution of the St. Louis crime rate and improving the safety of the citizens of this City"; and that the argument, in effect, told the jury: "This is your City; it's your duty to protect it; the defendant is on trial for burglary; burglary is a crime that must be stopped if we are going to have peace and tranquillity in this City; therefore, you (the jury) should convict the defendant." A careful reading of the assistant circuit attorney's argument as appears on the particular pages of the transcript to which appellant refers in his brief (also the argument considered as a whole) wholly fails to sustain the assignment and the argument made in support of it. The argument complained of was within the limits of permissible argument as shown in the cases and rules stated in State v. Laster, supra, 293 S.W.2d 300, 306[7, 8].

We have further carefully examined the record in regard to those matters not required to be preserved in the motion for a new trial and we find no error. Perhaps we should further say that defendant was well represented in the trial court by court-appointed counsel. Defendant was also permitted to appeal as a poor person and the court-appointed counsel who represented him in the trial court saw fit to represent defendant as appellant in this court and to file a brief in his behalf.

The judgment is affirmed.

All concur.