**STATE of Missouri, Respondent,**

**v.**

**James Lee WASHINGTON, Appellant.**

**No. 56340.**

Supreme Court of Missouri,
Division No. 1.

Sept. 11, 1972.

---

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Alfred I. Harris, St. Louis, for appellant.

BARDGETT, Judge.

James Lee Washington was charged by information with three prior convictions and the offense of burglary in the first degree of a dwelling house, an offense under § 560.040, RSMo 1969, V.A.M.S. He was tried by a jury under the provisions of § 556.280, RSMo 1969, and was found guilty of burglary in the first degree, and the court sentenced him to eight years imprisonment with the Missouri Department of Corrections. The motion for new trial was overruled, and appellant filed his notice of appeal on November 27, 1970. The record on appeal was filed here June 18, 1971. This court has jurisdiction, Art. V, § 3, Const. of Mo.1945, V.A.M.S. Appellant has been represented by retained counsel throughout the trial and on this appeal.

The information alleged, inter alia, that appellant forcibly broke and entered the home of Rosetta Evans at 3748 Evans Street, St. Louis, Missouri, on February 27, 1970, at a time when there was a human being therein, with the felonious intent to steal property of Rosetta Evans located there.

Rosetta Evans lived in a two-story flat at 3748 Evans in the City of St. Louis on February 27, 1970, with her five children, two grandchildren, and mother. Rosetta was not home during the early morning hours of February 27, 1970, when the burglary took place; however, two of her children, Lois Jean and Virginia, and one or two of Lois Jean's children were in the living room of their home, and others were asleep elsewhere in the house. Rosetta testified that there were furnishings in the house worth about $1,500.

Lois Jean Evans testified that about 2:00 or 2:30 a. m. on February 27, 1970, she had gone to the kitchen to get a bottle of milk and at that time checked to make sure the back door of the house was secure. The back door had two panes of glass in it which were not broken or cracked. There was a lock and a latch on the door and both were in place. The door was locked. Lois Jean went back into the living room where she and Virginia were talking. At about 2:45 a. m. she felt a draft and looked toward the doorway between the living room and the hallway inside the house and saw a man standing there who she identified as the appellant. Virginia started screaming. Appellant ordered her to stop, and when told to stop screaming by Lois, she did so. One of the sisters started coughing and appellant asked Lois Jean who was in the other room. Lois Jean told him it was her sister and brother-in-law. Appellant told her to lie down on the couch but she refused. He told her to cover her head and when she refused he put a bedspread over her head. Appellant was in the house not more than ten minutes. The bedspread did not prevent Lois Jean from seeing the appellant. She testified that he had a knife in his hand; his shoes were under his arm; he was in his stocking feet; he had a medallion with a blue stone in it around his neck; he was wearing a light blue shirt, "purple looking" pants, and a black scarf on his head; she did not remember whether or not he wore a jacket. He left the house.

Lois Jean called her mother on the phone and her mother then called the police. The police and Rosetta Evans arrived at the house at about the same time. Lois Jean and Virginia described the intruder to the police. Later that night the police brought the appellant back to the Evans house and Lois Jean identified him as being the person who had been in their home earlier.

After appellant left their house, Lois Jean and others in the house went to the kitchen and found the kitchen door open and one pane of glass had been removed and was lying on the step.

Virginia Evans, aged 13, and in the 6th grade, testified that she was in the living room of her home with Lois Jean. She saw a man in the hallway just off the living room. She screamed and finally stopped when told to do so by Lois Jean. Virginia described the wearing apparel of appellant much the same as did Lois Jean, and also said he was wearing a black leather jacket. Virginia thought she would recognize him again if she saw him but was unable to identify the appellant in court as the man in their home on the day in question. She did see the knife in his hand.

Officer Anthony Wachter of the St. Louis Police Dept. testified. On February 27, 1970, he and his partner were on patrol. They received a call at about 3:10 a. m. requesting arrest of a Negro male, 33 to 35 years old, wearing a black jacket, light-colored trousers, with a black scarf around his head, carrying a butcher knife, who was wanted for a burglary in the 3700 block of Evans.

The patrolmen went to the vicinity and at about 3:30 a. m. they observed the appellant standing on the porch of a residence at 3636 Evans, one block east of where the burglary occurred. As Wachter got out of the car and approached the man, the man started through a walkway between two houses. Wachter's partner went

around the back, and when appellant got about halfway through the walkway he stopped and started toward the front of the house. Wachter arrested him and thereafter searched him.

Appellant was wearing a black leather coat, light purple trousers and a blue shirt. Upon searching him Wachter found a butcher knife with a six-inch blade, a black headscarf, and saw that appellant was wearing a chain with a blue stone in the middle of a medallion.

The knife, scarf, medallion, and trousers were placed in evidence and identified by Lois Jean as being the same as those the intruder wore and carried at the time of the burglary.

Appellant did not testify and offered no evidence.

■ Appellant's first point is that there was no evidence or, at best, insufficient evidence from which the jury could find that appellant entered the house with the felonious and burglarious intent to steal goods, chattels or personal property of Rosetta Evans from the dwelling house and, therefore, the state failed to make a submissible case and appellant's motion for directed verdict should have been sustained.

There was no evidence that appellant stole anything from the Evans home, nor any direct evidence that he intended to steal from the home. The appellant was convicted under § 560.040, V.A.M.S., of burglary in the first degree. The same situation existed in State v. Powell, Mo., 357 S.W.2d 914. The court there, in ruling on this issue, said, loc. cit. 917 [1–3]:

"While it was necessary for the State to produce evidence from which the jury could find beyond a reasonable doubt that at the time the defendant broke and entered the building he did so 'with the felonious intent then and there to steal therein,' as submitted by the State's Instruction

1, this proof could be made by circumstantial evidence. 'The intent with which certain acts are done may be found, and frequently can only be found, from the attendant circumstances and must ordinarily be inferred from the facts' in evidence. State v. Whitaker, Mo.Sup., 275 S.W.2d 316, 319 [5–9]; State v. Lugar, Mo.Sup., 84 S.W.2d 614, 616 [1, 2]. It would seem that defendant would not have made the effort to break through two sets of doors secured by six locks unless he intended to profit thereby to some extent and in some manner, and the jury could well find from the facts shown that defendant broke and entered with an intent to steal therein. No lawful motive or purpose was shown to otherwise explain defendant's action. The jury could, therefore, infer and find from the facts shown that the breaking and entering were committed with the intent to steal. State v. Parks, Mo.Sup., 336 S.W.2d 369, 370 [2, 3]; State v. Lugar, supra, 84 S.W.2d 614, 616 [1, 2]. Consummation of the intent is not necessary to complete the crime of burglary. State v. Farris, Mo. Sup., 243 S.W.2d 983, 985 [1–2]; State v. Shipman, 354 Mo. 265, 189 S.W.2d 273, 275 [2, 4]. No authorities are cited in support of appellant's view. There is only a reference to the statute upon which the prosecution was based, to wit: Section 560.040 RSMo 1959, V.A.M.S. A case was clearly made for the jury and the assignment of error must be overruled."

Appellant's first point is overruled.

Appellant's second point is that the trial court erred in allowing the prosecution to use its peremptory challenges to the end that all Negroes were excluded from the jury.

■ The transcript of the record on appeal does not include the voir dire examination nor anything else to reflect the basis for this alleged error. The absence of any showing in the transcript of a basis for the alleged error precludes this court from finding that the trial court erred in the respect charged. State v. Overby, Mo., 432 S.W.2d 277, 279.

The judgment is affirmed.

All of the Judges concur.