**STATE of Missouri, Respondent,**

v.

**Smith CARSON, Jr., Appellant.**

**No. KCD 26343.**

Missouri Court of Appeals,

Kansas City District.

Nov. 5, 1973.

Theodore M. Kranitz, St. Joseph (Kranitz & Kranitz, St. Joseph, of counsel), for appellant.

William Rosenthal, St. Joseph, for respondent.

John J. Campbell, Farley, for appellant.

John C. Danforth, Atty. Gen., Mark D. Mittleman, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, C. J., and PRITCHARD and SOMERVILLE, JJ.

PRITCHARD, Judge.

By the verdict of a jury appellant was convicted of the commission of the crime of burglary of the residence of Dorothy Lingo in Platte County, Missouri. His punishment was assessed by the jury at two years imprisonment in accordance with which the court entered judgment of conviction with a sentence of two years imprisonment in the Department of Corrections.

By Points IV and V appellant attacks the sufficiency of the evidence to sustain the verdict, in particular that the evidence was purely circumstantial and did not ex-

clude every hypothesis of innocence. It is also said that the evidence presented by the state did not show a felonious intent on appellant's part beyond a reasonable doubt.

On March 31, 1972, Mrs. Lingo left her dwelling at 9205 N.W. Baugham Road about 11:15 or 11:20 a. m. She locked the doors as she left the kitchen door, and returned to her home around ten minutes after twelve. As she made a right-hand turn into the driveway she saw a car parked near it with the hood up and the motor running. In glancing back she noticed that the car had fins, but she did not see anybody in the car. It looked like a Cadillac, was green in color, and the car had no license plate in the front. Her dog was in the center of the driveway barking at the back door. She drove on in about 25 feet, then backed to be straight with the driveway, and saw her kitchen door open and a person came out of the kitchen and crossed the porch, stepping out of the back door. The person was dark—a Negro male. Mrs. Lingo rolled down the car window and asked the man what he wanted in her house. He answered that he found the back door open and that he just went in to look around. The man started walking down the driveway, turned around and asked Mrs. Lingo if she would give him a push as he was having car trouble. She told him she could not do so with her car. The man went on down the driveway and Mrs. Lingo and the four eleven-year old children, who were with her, went into the house by the back door, which was undone. She asked the children to go to the front door to see if they could get the license number of the car while she called the police. She did not see the man drive away. He was wearing a belted-back vinyl jacket with a design of metal brads on the back. Mrs. Lingo pointed out appellant in court as being the man whom she saw leaving her house on March 31st.

Mrs. Lingo's kitchen door, which was wood, was undone and there were wood slivers lying on the floor. The door was broken, "You could see wood had been gouged out, you know." The door was not in that condition when she left her home earlier. There were many valuables, furniture, two television sets, and jewelry in her house, but nothing was taken from it.

On Friday, following the burglary, Mrs. Lingo viewed more than 50 photographs (witness Detective Massock testified on pretrial hearing there were about 150 photographs), and from them picked out a single photograph of appellant as being the man she saw at her home on March 31st. Detective Massock arrested appellant for the burglary on April 7, 1972, and thereafter, Mrs. Lingo again identified him in a line-up (with one other Negro person) as the man she had seen at her home. Mr. Jewell Witt identified in court (with some equivocation on cross-examination, but having been positive on direct examination) appellant as the man who came to his home at 7915 Mace Road (apparently in the general area of Mrs. Lingo's home) at around 8:00 p. m., on March 30, 1972, asking directions to Weatherby Lake. The same man came to the Witt home about 10:00 or 10:30 a. m., on March 31, and stated he was the same man who was there the evening before and that he was still looking for Weatherby Lake. Mr. Witt again gave him directions and saw him get into a green car and leave.

Mr. Raymond Babcock testified by deposition that he resided at 9408 N.W. Baugham Road and on March 31, 1972, at about 12:00 noon, he was in the area of the Lingo home. He saw a 1960 green Cadillac parked diagonally across the road, and a Negro male wearing a dark colored coat with sequins across the back, on the front porch knocking at the door. Mr. Babcock backed up and the man on the porch turned and came back to his car and opened its door.

Mrs. Lingo's son, Scott, left the Lingo residence to get gasoline 10 or 15 minutes before 12:00 p. m., on March 31. He locked the back door securely before he left. On his way home he passed a Negro

male in a Cadillac which did not have a license plate on its front.

Detective Lynn Massock was in the neighborhood of 2924 Wabash in Kansas City for the purpose of checking for the green Cadillac which was described in the Lingo burglary. (Massock had prior knowledge that appellant's last known address was 2924 Wabash, and that Mrs. Lingo had tentatively identified appellant's photograph as being the man she saw leave her home.) At that address he saw a four-door light green Cadillac, with a license plate on the rear and none on the front. A computer check revealed that one Ronnie Trice was wanted on warrants in connection with the license plates. Massock approached the house at 2924 Wabash and as he did so a woman came onto the porch. In response to an inquiry she stated the car belonged to her son, appellant, and then she admitted the detective to the house. The woman called her son, appellant, to come downstairs, and Massock met him at the top of the stairs and arrested him for burglary. Appellant dressed and put on his coat, which was a black three-quarter length coat with a belt and silver brads on its front and back.

The above evidence, although circumstantial in part, is sufficient to sustain the verdict of appellant's guilt of the burglary of the Lingo residence. All the witnesses placed appellant at and near the scene of the burglary on the day and at or near the time it occurred. Mrs. Lingo's identification of appellant at the scene is sufficient. Corrobative is the evidence from other witnesses of the coat appellant was wearing, and which he wore at the time of his arrest. If, as appellant argues, Mrs. Lingo's "identification leaves much to be desired" because she had only "a side glance of the person she saw leaving the house and got only his profile and not a straight-on look at the individual", such goes merely to its weight in the jury's determination. Compare State v. Tucker, 451 S.W.2d 91, 95 [5] (Mo.1970). What may be inferred from the evidence of appellant's presence at the scene (he being the only stranger there) and during the short time Mrs. Lingo was away from her home, is that he was surprised by her return, and had opportunity only to break the kitchen door. His intent to burglarize the home may also be inferred from these circumstances, and it is of no importance to the crime charged that nothing was stolen from the house. State v. Whitaker, 275 S.W.2d 316, 319 (Mo.1955); State v. Powell, 357 S.W.2d 914, 917 [1–3] (Mo.1962), and State v. Washington, 484 S.W.2d 267, 269 [1] (Mo.1972). Points IV and V are overruled.

Appellant claims that the references by Mrs. Lingo and Detective Massock as to her being shown pictures of appellant by the Kansas City Police Department prejudiced the jury against him and denied him a fair trial because the references "could only leave in the minds of the jurors that the appellant had either been arrested previously or convicted of some prior crime." He argues that the general public is aware of the practice that the Police Department shows pictures of persons previously convicted or arrested, and not just any pictures of other individuals, to witnesses. There is no evidence that the Police Department had such a practice or that, if so, it was a matter of common knowledge. There is no evidence that appellant had been involved in other crimes or arrests. The pictures shown to Mrs. Lingo were not in evidence, and there was no evidence as to their origin. Nevertheless, if the jury could draw an inference from this evidence that appellant had been convicted of other crimes or arrested, the procedure here used for the *identification* of the person who had burglarized Mrs. Lingo's home was a matter of necessity. What is in this case is one of the exceptions to the rule that evidence of other crimes is inadmissible. That is that even though the evidence tends to prove another crime, if it goes to the identity of the accused, it is admissible. State v. Niehoff, 395 S.W.2d 174, 180 [4] (Mo.1965); State

v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 307 (1955). Here, the basic purpose of showing the photographs to Mrs. Lingo was to learn the name of the burglar, a matter of necessity to effect his arrest and prosecution. See also State v. Donnell, 430 S.W.2d 297, 305 [17] (Mo.1968). The case of Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, had in it the constitutional due process issue of whether photographs exhibited by the FBI were impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. The court held that petitioner's claim on that score must fail, and observed [390 U.S. 384, 88 S.Ct. 971], "In the first place, it is not suggested that it was unnecessary for the FBI to resort to photographic identification in this instance. A serious felony had been committed. The perpetrators were still at large. The inconclusive clues which law enforcement official possessed led to Andrews and Simmons. It was essential for the FBI agents swiftly to determine whether they were on the right track, * * *. The justification for this method of procedure was hardly less compelling than that which we found to justify the 'one-man lineup' in Stovall v. Denno, supra." [388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199.] The court in Simmons declined to prohibit the employment of identification by photograph on either supervisory power or constitutional requirement grounds. Point I, raising this issue, is overruled.

Appellant was exhibited to witness Jewell Witt prior to the time the information was filed at the Platte County jail. Along with appellant, who was about 6 feet tall and weighed between 160 and 165 pounds, was Harold C. Sappington, also a Negro, but who was 3 to 4 inches taller and 60 to 70 pounds heavier than appellant. According to Detective Massock, who conducted the "lineup", there were no other Negro persons available to place with appellant. Mr. Witt acknowledged that the two persons were dissimilar, but testified at the pre-trial hearing on direct examination to a positive identification of appellant. On cross-examination at that hearing, when asked "Q. And if the defendant had not been sitting out there when you just identified him a moment ago you still think in a span of three or four months that you could still, identify him if you did not know he was the defendant? A. I think so. Q. You think so, but you're not sure. A. I'm not sure, no." Mr. Witt observed appellant for about 3 minutes on the evening of March 30, then again on the morning of March 31st. At the trial, Mr. Witt again made a positive identification of appellant on direct examination, but recanted his previous pre-trial testimony "I'm not sure, no" during cross-examination at trial.

There is no contention that the lineup was not admissible because appellant did not have counsel at that time. In any event, it was conducted prior to the information being filed, and appellant after having been advised of his right to counsel, although not signing a proffered waiver form, did voluntarily submit himself to the lineup, as the evidence shows. Under Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), no constitutional infirmity appears by reason of lack of counsel at that stage of the proceedings. The matter must be determined from an examination of the "totality of the circumstances" under Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). In that light, although the two man confrontation could have "suggestive possibilities" (cf. State v. Parker, 458 S.W.2d 241, 244 (Mo.1970) where one photograph was viewed), there is no evidence here of any suggestive influence by those conducting the lineup. There is a definite presence of an independent source of identification, and there was positive courtroom identification. The independent identification placed appellant near the scene on the day in question and was merely corroborative of Mrs. Lingo's testimony and cumulative thereto. Appellant has not been denied a fair trial by reason of the admission of the

lineup evidence, and Point II raising this issue is overruled.

■ Point III raises the issue that the court erred in overruling appellant's motion to suppress evidence of his coat because he was arrested without a search warrant and, therefore, the subsequent search and seizure was illegal. The facts which Detective Massock had learned prior to the arrest are these: Mrs. Lingo's house had been burglarized; there was at the scene a green Cadillac with no license plate on the front. From many photographs, Mrs. Lingo picked out one of appellant as being the man who was on the back porch of her home, thus furnishing to Massock his identity. Massock knew that appellant's last known street address was 2924 Wabash and he proceeded to that address for further investigation. There he saw a green Cadillac with no license plate on the front, matching the description given by Mrs. Lingo. He checked the license plate, learning that it was registered in the name of Trice who was wanted by police. Then he inquired of the lady on the porch of 2924 Wabash as to the car's ownership, and she answered that it belonged to her son, appellant, whom she called. All these facts gave rise to a reasonable belief by Massock, knowing that a recent felony had been committed, that appellant had committed it. Probable cause for the arrest thus existed for appellant's arrest [even though Massock testified on pre-trial hearing that he did not believe that he had probable cause for the arrest], and the subsequent seizure of his coat which he was wearing (and which matched the description of it given by witnesses) was proper. Point III is overruled. See State v. Ward, 457 S.W.2d 701, 705 [2–6] (Mo. 1970); State v. Novak, 428 S.W.2d 585, 591 (Mo.1968), and State v. Harris, 477 S.W.2d 42 (Mo.1972).

The judgment is affirmed.

All concur.