tionable now." State ex rel. Burgess v. Neaf, 439 S.W.2d 190, 194 (Mo.App.1969).

Judgment affirmed.

SMITH, C. J., and ALDEN A. STOCK-ARD, Special Judge, concur.

STATE of Missouri, Plaintiff-Respondent,

v.

Arthur Lee SMITH, Defendant-Appellant.

No. 36078.

Missouri Court of Appeals, St. Louis District, Division 4.

March 11, 1975.

Charles D. Kitchin, Public Defender, Michael C. Horn, James C. Jones, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., K. Preston Dean, III, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

NORWIN D. HOUSER, Special Judge.

Arthur Lee Smith, convicted by a jury of second degree burglary, § 560.045, RSMo 1969, V.A.M.S., and sentenced to seven years' imprisonment appeals on two grounds.

First, defendant contends that the evidence failed to prove intent to steal, which is an essential element of second degree burglary. Burglary of the dwelling house of Daisey Thomas was charged. Mrs. Thomas secured the windows and doors of her house and left home at 5:30 a. m. to go to work. About 10:30 a. m. defendant parked his automobile across the street, a few houses up from the Thomas residence. A neighbor, Mr. Williams, who was looking out of his window, saw a car stop across the street, and observed defendant get out on the driver's side, walk across the street and approach the Thomas house. Then he lost sight of the man, behind a hedge. Mr. Williams gave an in-court identification of defendant, and also identified a hat, jacket, shirt and trousers taken from defendant when arrested, as similar to those worn by the man Mr. Williams saw on the day in question. Another neighbor, Mrs. Dandridge, was attracted by the noise of the motor, which was left running. She looked out her window, saw a man "peeping around" in the back and side yard of the Thomas property, and then saw him bend down toward a side window of the house. Her suspicions aroused, Mrs. Dandridge called the police, who arrived in about two minutes, at 10:40 a. m. The police found all of the doors of the Thomas house secured. As one of the officers turned around after checking the rear basement door and started up the steps the defendant, who was inside the basement, opened the basement door from the inside, and asked the officers if they wanted to come in. They entered the house and when they interrogated defendant he falsely claimed that he had lived there at that address for three weeks, and that the neighbors knew him. He mistakenly gave the address as 4926 Margaretta when in fact the house was numbered 4937. He also told the officers that his wife had the key. The officers arrested defendant, advised him of his rights, and upon further investigation found that a basement window on the side of the house (locked when

Mrs. Thomas left for work) had been pushed in. The window was open and the storm window removed. The officers also found that a lock on an inner door leading from basement to upstairs (not broken when Mrs. Thomas left that morning) was forced open or broken. Otherwise nothing in the house was disturbed. While talking to the police defendant was nervous; his hands were shaking and he was stuttering. No burglar tools were found on defendant. Mrs. Thomas did not know defendant and had not authorized him to enter the premises.

At trial defendant accounted for his presence in the house as follows: He testified that he entered the house because he was running from one Charles Porter, whom he claimed had held a pistol on him out the window of his car; that defendant drove off and after a ten or fifteen minute run with Porter chasing him in a green Buick Electra, defendant drove into Margaretta Street, parked his car, left it running, jumped out of the car and ran as fast as he could to the Thomas house, knocked on the door, and then entered the house through a basement window which was open; that he did not remove the storm window; that he hid under some clothes and never left the basement. Defendant denied the statements attributed to him by the police, and testified that he had been shot by Porter prior to that time. A police officer testified that a month later he arrested Porter for shooting defendant. The police officers testified that defendant did not mention the Porter chase when he was questioned at time of arrest. Defendant did not testify that he told the police that he was being chased. He said he made no statement to the police except to ask whether they arrested "the fellow behind him."

On appeal defendant contends that the State's evidence did not prove the intent to steal and in many respects supported defendant's explanation of his presence in the building. Defendant points to the subsequent arrest of Porter for shooting him as supportive of the claim that Porter was chasing him and that he was seeking a place to hide at the time in question; that no property inside the house was disturbed; no burglar tools discovered; that the incident occurred in broad daylight; that defendant parked almost in front of the house he entered; that he left his engine running, notwithstanding it was so loud it sounded like it lacked a muffler, and that instead of running from the officers he opened the basement door for them.

 All essential elements of burglary may be inferred from this evidence. A breaking by defendant may be found circumstantially from Mrs. Thomas' testimony that all of the windows were secured when she left the house at 5:30 a. m.; Mr. Williams' testimony that at about 10:30 a. m. a man identified as defendant approached the Thomas house; Mrs. Dandridge's testimony that about the same time she saw a man bent down at the basement window, and the testimony of the officers that the basement window had been pushed in, was open and the storm window removed. An entry of the dwelling by defendant was admitted by him. This constitutes direct evidence of that fact. State v. Bartley, 501 S.W.2d 519, 520 [1] (Mo.App.1973). The element of intent to steal, not usually susceptible of direct proof, may be proved by circumstantial evidence. State v. Powell, 357 S.W.2d 914 (Mo.1962). The intent to steal could be inferred in this case from defendant's conduct in first knocking (to determine if anyone was at home), then peeping around in the yard (to survey the situation and perhaps ascertain if there were any easy means of ingress), his method of entry into the dwelling, the fact that his entry was unauthorized, his rummaging around in some clothes in the basement, the forcing or breaking of a lock on the inner door leading from the basement to the upstairs, his presence at the scene when the officers arrived, he being the only stranger there; his attempt to deceive the officers by false assertions that he

lived there, that his wife had the key, that the neighbors knew him, and his inability to recall the correct house number. State v. Carson, 501 S.W.2d 503, 506 [2] (Mo.App.1973); State v. Smith, 357 S.W.2d 120, 123 [6] (Mo.1962); State v. Wheeler, 478 S.W.2d 326 (Mo.1972).

 The fact that nothing was actually stolen from the house or found on defendant's person is of no importance. State v. Carson, supra. It is not necessary that the act of stealing be completed after the breaking and entry. State v. Smith, supra. Nor does the fact that defendant took the stand and testified to a set of circumstances explanatory of his presence in the dwelling entitle him to a directed verdict of acquittal, as claimed. The jury was not bound by defendant's explanation, even though not impeached, and was entitled to disbelieve it and draw an unfavorable inference from the evidence above detailed. State v. Durham, 367 S.W.2d 619, 622 [4] (Mo.1963), a case involving an accused's explanation of his possession of property stolen in the commission of a burglary.

Next, defendant contends that the court erred in refusing his Instruction A,[1] which he says was supported by the evidence. This portion of MAI–CR 2.10 is not appropriate in the trial of a second degree burglary case where the accused has admitted one essential element of the offense, namely, entry of a dwelling house, an entry shown to have been unauthorized. Defendant was not apprehended outside a house where he happened to be found, in the role of an innocent and nonparticipating bystander, while an offense of burglary was being committed inside by other persons. Defendant was apprehended inside the dwelling house, under circumstances where there was evidence of forcible breaking. In a second degree burglary

case mere unauthorized presence of a person found inside the dwelling house of another constitutes active participation and is admissible evidence on the question of guilt. Admitting his entry, which he could hardly deny having been found inside the house, he sought to justify his "mere presence" by giving explanations which neither the investigating officers nor the jury accepted. Giving this instruction under these circumstances would have constituted misdirection of the jury. The court did not err in refusing Instruction A.

Judgment affirmed.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.

---

1. "The presence of a person at or near the scene of an offense at the time it was attempted is alone not sufficient to make him responsible therefor, although his presence may be considered together with all of the evidence in determining his guilt or innocence." (MAI–CR 2.10, second paragraph).