**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Raymond Glen KIPLINGER,**
**Defendant-Appellant.**

No. 11075.

Missouri Court of Appeals,
Southern District, Division One.

Nov. 29, 1979.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 19, 1979.

Application to Transfer Denied
Jan. 15, 1980.

John D. Ashcroft, Atty. Gen., Steven Scott Clark, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

W. Henry Johnson, Douglas, Douglas & Johnson, Neosho, for defendant-appellant.

GREENE, Judge.

Defendant Raymond Glen Kiplinger was charged with the crime of burglary in the first degree, § 560.040, RSMo 1969, V.A. M.S. After jury trial, defendant was found guilty of the offense charged and was sentenced by the trial judge, pursuant to the provisions of the Missouri Habitual Criminal Act, to a term of 7 years in the custody of the Missouri Department of Corrections. This appeal followed. We affirm.

Two assignments of error are made on appeal, which are that the trial court erred in 1) allowing the complaining witness to make an in-court identification of defendant, over his objection, as the person who had broken into her home, for the reason that the pre-trial lineup procedure was impermissibly suggestive and that there were not sufficient facts, independent of the lineup, on which to base a reliable in-court identification, and 2) overruling defendant's motion for judgment of acquittal filed at the close of the state's evidence, for the reason that the evidence was insufficient to prove the crime of burglary in the first degree.

Relevant facts necessary to decide the issues raised are as follows. Eithel Hayden and her husband, George, lived in a farm home in the rural area of Newton County. The home contained furniture, lamps, a television set and other articles of value. The house was isolated, with the nearest neighbor being about one-half mile away. A lane led from the Hayden home to a county road. The lane was posted with a "No Trespassing" sign.

On January 20, 1978, at about twelve noon, Eithel was home alone. She heard a car enter her driveway, looked out the window, and saw the car stop behind her home. Two men were in the car. She did not know either of the men. As a rule, she did not answer the door when strangers came to the house. Mrs. Hayden became apprehensive, went to the living room and crouched down by the air conditioner. She heard someone knock at the back door, and then the front door. The back door was closed and bolted. This process was repeated five or six times until she finally heard the back door being "crashed into".

She ran into the kitchen, at which point she saw someone "lunging" through the back door. The door bolt bent, and the screws holding it in place pulled out, allowing the intruder to force his way into the home. At trial, Mrs. Hayden identified the defendant as the intruder. Defendant stopped inside the door when he saw Mrs. Hayden. She was only a few feet from him when he saw her, and she was facing him. When defendant saw Mrs. Hayden, he said he "thought something was wrong." Defendant had a slip of paper in his hand and said he was "looking for that address." He repeated the statement two more times. The face-to-face confrontation lasted two to three minutes. About that time, Mrs. Hayden heard the sound of the mailman's car. Defendant went out the back door and left

the premises. Defendant did not take anything from the Hayden home. He did not stop to talk to the mailman.

When defendant left, Mrs. Hayden began crying, and then called her husband, who was at the Neosho Senior Citizen's Center. Her husband went to the sheriff's office to report the break-in. Deputy Sheriff Charles R. Barnett went to the Hayden home and obtained a description of the intruder from Mrs. Hayden.

Barnett testified that Mrs. Hayden told him the intruder was short and stocky, approximately 5′4″ to 5′6″ in height, that he had long hair, and that he was in his middle 20's. At trial, Mrs. Hayden testified that she told Barnett that the intruder was between 5′ and 5′4″ tall, that he had red hair, and that he had a red bandana tied around his head. Later in the day, after defendant had been apprehended, Deputy Barnett called Mrs. Hayden, told her he thought they had caught the person who had broken into her home, and asked her to come to the courthouse to see if she could identify the suspect. She went to the courthouse where she viewed a lineup. The lineup, which was reminiscent of a scene from the television show Saturday Night Live, consisted of the defendant, who bore a resemblance to a diminutive look-alike of country singer Willie Nelson, red bandana and all, five other men, the shortest of whom was 5′11″ tall, and a red Coca-Cola machine. Defendant was the only person in the lineup who had red hair and who was wearing a red bandana as a headband. At the motion to suppress hearing, Mrs. Hayden was asked if defendant was the only person in the lineup with red hair. Her reply was, "I didn't notice the other ones because when I saw him, I knew it was him." The lineup viewing was held less than five hours after the break-in.

### THE LINEUP ISSUE

■ Convictions based upon eye-witness identification at time of trial may be set aside if the pre-trial identification procedure, such as a lineup, was so impermissibly suggestive as to give rise to a substan-

tial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Even if the pre-trial identification procedure was unnecessarily suggestive, the conviction will be upheld if, under the totality of circumstances, the in-court identification is reliable. In determining reliability, the court balances the possible suggestive influence of the pre-trial identification procedure against the totality of the circumstances giving rise to the in-court identification in question.

■ Several factors of reliability to be considered by the court are 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness' degree of attention at the time of the crime; 3) the accuracy of the witness' prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and, 5) the time period between the crime and the confrontation. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, supra, 409 U.S. at 199, 93 S.Ct. 375; *State v. Armbruster*, 541 S.W.2d 357, 360 (Mo.App.1976).

On review of this question, we must determine if the pre-trial lineup was so suggestive that an independent basis must be shown to support the reliability of the in-court identification, and, if suggestive, whether the in-court identification was firmly grounded on observations made by the witness at the time of the crime and whether her in-court identification testimony at time of trial was positive. *State v. Bivens*, 558 S.W.2d 296, 299–300 (Mo.App. 1977).

■ We observe that the lineup in question left a great deal to be desired, even when recognizing the difficulty of a rural county sheriff producing, on short notice, five or six adult suspects who were 5′4″ tall or less, with long red hair, held in place by a red bandana. However, we believe that any possible imperfections in the lineup procedure were removed by Mrs. Hayden's un-

tainted in-court identification of the defendant. *State v. Gillum*, 540 S.W.2d 167, 168 (Mo.App.1976).

Mrs. Hayden had an excellent opportunity to observe defendant at the scene of the crime. She stood face to face with him in the middle of the day for two or three minutes. During part of that time, she conversed with him. She gave a description of the intruder to the sheriff's deputies. This description accurately described the defendant, as evidenced by his photograph, which was introduced into evidence at the motion to suppress hearing as defendant's exhibit 7. The time lapse between Mrs. Hayden's initial confrontation with defendant and her identification of him at the sheriff's office was less than five hours. She made an unequivocal identification of the defendant, at time of trial, as the man who broke into her home. The evidence demonstrated adequate independent grounds for the in-court identification, and the facts and circumstances brought out in evidence gave such identification a reliability warranting the admission of such evidence. The assignment of error is denied.

### THE INSUFFICIENT EVIDENCE ISSUE

Defendant filed a motion for judgment of acquittal at the close of the state's case, alleging insufficiency of evidence to support the charge. The motion was overruled. Defendant then presented evidence and did not renew his motion for judgment of acquittal at the close of all of the evidence. By offering evidence in his own behalf, defendant waived any claim of error by reason of the overruling of his motion for judgment of acquittal. *State v. Garrett*, 518 S.W.2d 97, 99 (Mo.App.1974); *State v. Hill*, 438 S.W.2d 244, 247 (Mo.1969).

We have not been asked to review this assignment of error under the plain error doctrine, Rule 84.13(c), V.A.M.R., and decline to do so sua sponte, as a consideration of the facts and circumstances as a whole, supports the conclusion reached by the jury that defendant broke into the Hayden home with the intent to steal. *State v.*

*Washington*, 484 S.W.2d 267, 269–270 (Mo. 1972); *State v. Powell*, 357 S.W.2d 914, 917 (Mo.1962).

The judgment is affirmed.

All concur.