STATE of Missouri, Respondent,

v.

Donald Gene DURHAM, Appellant.

No. 49699.

Supreme Court of Missouri,

Division No. 2.

April 8, 1963.

Motion for Rehearing or to Transfer
to Court En Banc Denied
May 13, 1963.

Donald Gene Durham, in pro. per.

Thomas F. Eagleton, Atty. Gen., Thomas R. Green, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

STOCKARD, Commissioner.

Defendant was convicted of burglary in the second degree and of stealing, and he was sentenced under the habitual criminal act to imprisonment for eight years for the burglary and to four years for the stealing, the terms to be served consecutively. Defendant has filed no brief in this court as appellant. He has filed pro se what he denominates to be a "reply" to the brief filed by the State as respondent. In the motion for new trial defendant asserts that the evidence was insufficient to support the verdict, that the court erred in overruling his motion to suppress evidence, and that error resulted from an incident occurring in the courtroom.

On March 27, 1962, at the close of the business day, the manager of the Newberg Lumber Company closed the building and locked the doors. The next morning the staple had been twisted out of the hasp by which the door was locked with a padlock, the built-in lock of the door had been pried open, and various items of property having the value of $450 were missing including a chain saw, four power utility saws, two electric drills, some screw drivers, a radio and certain other items.

About four o'clock in the afternoon of March 27, 1962, defendant was at the home of Alvie Burton Hacker in Edwardsville, Illinois, and he left there with Robert Willis to drive to Newberg, Missouri. Albert Willis, a resident of Newberg, testified that at about 1:30 o'clock in the morning of March 28, he saw defendant park his 1954 Plymouth automobile about 200 feet from the back of the Newberg Lumber Company. Two men got out of the automobile and walked down the alley and defendant stayed with the automobile. While the two men were gone defendant "acted like he had light trouble, or something." He lifted the hood of the automobile and flashed the lights on and off. The two men returned in about thirty minutes but had nothing with them that Albert Willis could see, and after getting in the automobile they and defendant drove away. At 8:00 o'clock in the morning of March 28, defendant returned to the home of Alvie Burton Hacker. He told Hacker that he had obtained a chain saw and that he had "paid $50 down on the saw." Defendant got the chain saw from his automobile, which admittedly was the saw which had been stolen from the Newberg Lumber Company only a few hours earlier, and told Hacker he would leave it at his house. He also gave Hacker four screw drivers, and suggested that he, Hacker and Robert Willis attempt to solicit some tree trimming jobs. They started out in defendant's automobile with Hacker driving at defendant's request. Shortly after noon Reece H. Morgan and Gerald F. Johnson, members of the Illinois State Highway Police, stopped the automobile of defendant. Trooper Morgan stated to Hacker that he was under arrest for improperly displaying the license plate. Through the back window of the automobile Trooper Morgan saw a radio which had the price of $23.95 marked on it, and he also saw a display carton of new screw drivers lying on the seat. At the trooper's request Hacker opened the trunk of the automobile for inspection. Defendant and Robert Willis were asked to go to the rear of the automobile, and Trooper Morgan then searched the automobile for weapons to insure the safety of himself and Trooper Johnson while taking Hacker and the other two occupants of the automobile to the police station. In this search Trooper Morgan found on the floor of the automobile between the seats, but under a blanket, various items of property all of which were

later discovered to have been stolen from the Newberg Lumber Company during the preceding night. On the way to the police station, defendant told Robert Willis that they would have to get rid of the screw drivers, and Willis put them under the back seat of the car where they were later found by the police. Defendant also told Hacker "not to worry about anything at all, * * * [that he, Hacker] didn't know anything about anything, so not to worry about it." At the police station defendant and his two companions were "shook down," and later Hacker took a "lie-detector test" which confirmed his contention that he had no knowledge that the property found in the automobile, and the chain saw and screw drivers at his home, had been stolen

Defendant testified that he had nothing to do with the burglary, and that about 7:00 o'clock in the morning of March 28 he had purchased the property which was found in his automobile, and the chain saw, from Marckum Vincent Trail at the corner of 19th and Madison Streets in St. Louis. Trail did not testify. Defendant further testified that at the time he purchased the articles Trail was living in St. Louis, "around there in Forest Park," but that "through letters" he had received he had heard that Trail was living in East St. Louis. Defendant also testified that at the time of his arrest in Illinois he had with him a bill of sale which he had received from Trail, but that he had concealed the bill of sale in his boot, and he did not show it to the Illinois police because he was afraid it would "disappear like another bill of sale did disappear." However, he testified that he did tell the Illinois police that he had a bill of sale and that he "would produce it at my trial." Defendant offered in evidence a document labeled "Bill-of-Sale" dated March 28, 1962, purportedly in the handwriting of Trail and signed by him, in which it was stated that he sold a chain saw to defendant for $75 with a payment of $20 down and $55 to be paid in 60 days, and that the remainder of the articles therein listed were to be "sold on a ⅓ commission of

whatever legal tender obtained & not to be sold for less than the total amount of $150.00."

In his motion for new trial defendant first contends that the evidence is insufficient to support the verdict because (a) there was no "factual evidence" that he broke into and entered the Newberg Lumber Company building or that he stole anything therefrom, (b) the bill of sale from Trail, which was not impeached and "must be taken as true by the jury," explained his possession of the stolen articles, and (c) the verdict is contrary to the court's instruction that possession of stolen goods alone would not, by itself, sustain a verdict of guilty. We note that defendant did not submit to the court a motion for judgment of acquittal.

■ The evidence in this case relied upon by the State to establish defendant's guilt is circumstantial. However, in a burglary and stealing case the State may, and frequently must, rely on circumstantial evidence. Such evidence is sufficient provided the facts and circumstances relied upon by the State are consistent with each other and with the hypothesis of defendant's guilt, are inconsistent and irreconcilable with his innocence, and point so clearly and satisfactorily to his guilt that they exclude every reasonable hypothesis of innocence. State v. Murphy, 356 Mo. 110, 201 S.W.2d 280, 282; State v. Worley, Mo., 353 S.W.2d 589, 594. The question thus presented is whether the evidence in this case fails to meet the above requirements for the reasons assigned by defendant.

■■ It has long been the rule that an inference of guilt is permissible from the possession of property recently stolen in a burglary, and the inference exists both as to the burglary and the stealing. State v. Denison, 352 Mo. 572, 178 S.W.2d 449, 455; State v. Oliver, 355 Mo. 173, 195 S.W.2d 484; State v. Hagerman, 361 Mo. 994, 238 S.W.2d 327; State v. Reagan, Mo., 328 S.W.2d 26. However, to authorize the inference of guilt, the defendant's possession of the stolen property should not be too

remote in point of time from the crime, and it should be a personal possession, exclusive, distinct and conscious, and unexplained. " 'Where the character of defendant's possession is such as to fulfil these requirements, it is evidence of his guilt, connecting him with the commission of the burglary, and, in the absence of countervailing evidence, may be sufficient to sustain a conviction of burglary.' " State v. Watson, Mo., 350 S.W.2d 763, 766. There is no question in this case concerning the fact of the burglary, nor is there any question as to the identity of the property in defendant's possession as that stolen in the burglary of the Newberg Lumber Company. Also, defendant had the property in his possession at 8:00 o'clock on the morning of March 28, 1962, a matter of only a few hours after it necessarily had to have been stolen during the commission of a burglary. The facts and circumstances of the burglary and the stealing, the fact that defendant was present in Newberg and was seen near the lumber company at 1:30 o'clock in the morning, his admitted exclusive possession of the stolen property very recently after the burglary, and his efforts to conceal the possession of the property by hiding it under a blanket in his automobile, constituted "factual evidence" from which it was permissible for the jury to infer that defendant participated in both the burglary and the stealing.

■ Defendant's contention that the bill of sale was not impeached and that it had to be taken as true by the jury is without merit. First, the circumstances under which defendant asserts that he obtained the bill of sale and acquired the stolen property, when considered with his testimony that he had the bill of sale when arrested but kept its existence a secret by hiding it in his boot, is to a certain degree self-impeaching. Second, the jury was not bound by defendant's explanation, even though not impeached, and it was entitled to disbelieve the explanation and then draw an unfavorable inference from his possession of the stolen property. This was expressly ruled in State v. Denison, supra, where it was said: "[I]t

seems to be appellant's theory that if he presents an explanation [of his possession] then the jury cannot draw an unfavorable inference from his possession, whether they believe his explanation or not. But this is not the law. If it were, the rule of evidence under discussion would be useless. In almost every such case some explanation is offered by the accused. The doctrine in this State and elsewhere is that the credibility of the explanation is a question of fact for the jury; and if the jury disbelieves it the case stands with his possession unexplained." See also State v. Hagerman, 361 Mo. 994, 238 S.W.2d 327, 329.

■ The trial court instructed the jury that "evidence of possession by the defendant of recently stolen property, if you so find, is not of itself proof of defendant's guilt of the stealing of such property, but it is for the jury to consider such facts and circumstances along with all of the other facts and circumstances in evidence * * *." Defendant's contention that the verdict was contrary to this instruction erroneously presupposes that there was no other evidence for the jury to consider but that of his possession. The jury was entitled to consider the admitted fact of his presence in Newberg, and the evidence that he was near the Lumber Company at 1:30 o'clock in the morning of March 28, 1962 under suspicious circumstances. It could also consider the reasonableness of the alleged circumstances by which defendant said he obtained possession of the stolen property, the fact that he had some of the property hidden under a blanket in his automobile, that he had Robert Willis try to conceal the screw drivers after being stopped by the police, and his alleged possession of the bill of sale and his assertion that he hid it in his boot. The instruction properly told the jury that the fact of possession should be considered by them along with these other facts and circumstances. All of these facts and circumstances are consistent with each other and are irreconcilable and inconsistent with any reasonable theory of innocence. The first assignment

of error in the motion for new trial is without merit.

█ Before the commencement of the trial defendant filed a motion to suppress evidence on the basis that it was obtained by an illegal search and seizure. The substance of the allegations in the motion was that "the Highway Patrol of the State of Illinois * * * after stopping the car in which the defendant was riding and with no previous knowledge that a crime had been committed, searched the automobile and claimed to have found certain articles in said car that later proved to have been stolen," and that the Highway Patrol "had no search warrant or other authority to search said car." After a hearing at which Trooper Morgan, defendant and the other two occupants of the automobile testified, and the circumstances of the arrest and search as previously stated were brought out, the trial court overruled the motion to suppress. At the trial the State offered in evidence the radio which was observed by the trooper through the window of the automobile, and the chain saw which defendant had left at the home of Hacker and which was picked up by the police with Hacker's consent. The motion to suppress applied only to evidence "which was obtained by the Highway Patrol of the State of Illinois * * * by search and seizure of the automobile in which defendants were riding," and did not apply to the radio and chain saw. See State v. Campbell, Mo., 262 S.W.2d 5. The State also introduced in evidence, without objection from defendant that they were obtained by an illegal search and seizure, four power saws and two Shopmate power drills. These items were discovered by Trooper Morgan on the floor of the automobile under the blanket after the arrest of Hacker when he searched the automobile for weapons to insure the safety of himself and his fellow officer. Assuming that no objection at the time the items were offered in evidence was necessary to preserve for appellate review the ruling on the motion to suppress, see State v. Windsor, Mo.App., 289 S.W. 663, defendant has not demonstrated an unreasonable search and seizure.

Not every search without a warrant is unreasonable, nor for that matter, is every search pursuant to a warrant reasonable. In this case the search of the automobile was made in the State of Illinois by members of the Illinois State Highway Police without a warrant, but it was made in connection with and incidental to the lawful arrest of the operator of the automobile to look for weapons to insure the safety of the police officers. Chap. 121, par. 307.16, Illinois Revised Statutes, provides that members of the Illinois State Highway Police "are conservators of the peace and as such have all powers possessed by policemen in cities, and sheriffs, except that they may exercise such powers anywhere in [that] State." In People v. Wrest, 345 Ill.App. 186, 103 N.E.2d 171, after citing and quoting the above statute, it was expressly held that a member of the Illinois State Highway Police has authority without a warrant to search the immediate premises as an incident to a lawful arrest. In People v. Barg, 384 Ill. 172, 51 N.E.2d 168, certiorari denied, 321 U.S. 798, 64 S.Ct. 939, 88 L.Ed. 1086, the immediate premises which were searched incident to an arrest consisted of the automobile in which the arrested person was riding. In addition, a search may be made when reasonably necessary to protect the arresting officer from attack, that is, to insure the safety of the arresting officer, People v. Burnett, 20 Ill.2d 624, 170 N.E. 2d 546, and according to Trooper Morgan that was the purpose of the search in this case. There is no merit to this contention of error.

The third and last assignment of error pertains to an incident which occurred during the argument of defense counsel to the jury. The transcript shows the following:

"Mr. White: * * * and might want him to be cleared, and no doubt she did, but she's not getting any money for trying to clear him, she's not on anybody's payroll * * *

"Reckon I'd better wait till this dies down a little bit.

"(Thereupon, there was a pause in proceedings, after which time the following further proceedings were had:)

"The Court: Go ahead and finish your argument.

"(Thereafter, Mr. White finished his closing argument.)"

In the motion for new trial defendant alleges that Robert Willis, who was originally jointly charged with defendant but for whom a severance had been granted, "escaped from the custody of the officials and caused such a commotion that various remarks were made which together with the confusion of officials running through the courtroom with drawn guns so prejudiced the jury against the defendant that this defendant could not obtain a fair and impartial trial." A hearing was had on the motion for new trial. Defendant testified that "just about the time that the defense finished its case" there was a commotion in the courtroom and that he heard someone say, "Willis escaped. There's Durham's partner." He also testified that the prosecuting attorney said to him that "There goes your partner, he's escaped." In describing the incident defendant stated that "Police officers were running through the courtroom to obtain revolvers," and that one Illinois State Highway Patrolman had a revolver out in his hand, and the other one had the revolver in his hand, still in the holster, that "the police officers were running all through the courtroom and they were going out to try to chase * * * Mr. Willis," and that "a good two-thirds of [spectators] at least left the courtroom into the annexation." The State offered no evidence on the motion.

 The decisive issue on this appeal is whether the trial court abused its discretion in failing to declare a mistrial at the time of the occurrence, or after verdict in failing to grant a new trial because of it. The trial judge was present, observed the occurrence, and was able to evaluate its effect on the jury, if any. We cannot say, as a matter of law, that the incident called for the declaration of a mistrial by the court on its own motion. At the time of the occurrence no request for a mistrial was made, and in fact there was no request whatever for any remedial action. It is the long established rule that a defendant may not first assign error in his motion for new trial on the ground the court refused to grant a mistrial when he did not request it. State v. James, Mo., 347 S.W.2d 211, 214; State v. Benjamin, Mo., 309 S.W.2d 602, 606; State v. Hepperman, 349 Mo. 681, 162 S.W.2d 878. It is obvious that the defendant, having passed the incident at the time without a request for any relief, either considered the incident of no consequence or was willing to gamble on the result and the effect it might have on the jury. In either event after verdict he cannot contend that by reason thereof he is entitled to a new trial. State v. Whitaker, Mo., 275 S.W.2d 316; State v. Tyler, Mo., 306 S.W.2d 452; State v. McKeever, 339 Mo. 1066, 101 S.W.2d 22.

The information is in proper form. The verdict of the jury is responsive to the issues, defendant was accorded allocution, and the punishment fixed by the court was authorized. The record does not show formal arraignment in the form prescribed by Supreme Court Rule 25.04, V.A.M.R., but the record shows that he was tried as though he had been arraigned and had entered a plea of not guilty. Defendant and counsel are shown to have been present throughout the trial, and the judgment and sentence are in due form.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.