**STATE of Missouri, Respondent,**

v.

**Jewell J. SCOTT, Appellant.**

No. KCD 27195.

Missouri Court of Appeals, Kansas City District.

July 7, 1975.

Willard B. Bunch, Public Defender, Douglas N. Merritt, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

SWOFFORD, Presiding Judge.

Appellant, Jewell Scott, having waived a jury, was tried before the court and found guilty of fraud by use of a credit card in violation of § 561.415, RSMo 1969, V.A.M.S., and sentenced to two years in prison. Execution of the sentence was, however, suspended, and appellant was placed on probation for a period of five years with the condition that she make restitution to the victim of the offense.

The sole assignment of error on this appeal is that the judgment of the trial court was not supported by the evidence.

This case involves the misuse of a lost credit card issued by the J. C. Penney Store Company to Mr. Maurice Robinson. On December 13, 1972, Mr. Robinson inadvertently left his card with a clerk at the J. C. Penney Company store located at 31st and Troost in Kansas City, Missouri. The following month, he received a bill for fourteen purchases, which both he and his wife denied having authorized. Fourteen credit sales slips were introduced into evidence by the state; all were issued by sales clerks at the J. C. Penney Company store at the Blue Ridge Mall in Independence, Missouri. The sales slips were dated from December 14 through December 23, 1972, and signed in the name of Mrs. Maurice Robinson.

Mr. Robinson contacted the J. C. Penney Company, in regard to these purchases, and they began an investigation. It was discovered that on December 13, one of the Troost store managers had taken Mr. Robinson's card and placed it on a desk at the credit office. Since one of the sales slips in question began the name of "Maurice" with a "J" instead of an "M", payroll records were examined to determine if any employees who had access to the credit office area also had a name beginning with "J". Appellant fit this criteria. She was employed at the store at 31st and Troost and worked in a department adjacent to the credit office.

The store also engaged the services of a handwriting expert to compare the signatures on the sales slip with other examples of Jewell Scott's handwriting. However, this man did not testify at the trial. The state elicited testimony from another handwriting expert that appellant Scott "most likely" executed the questioned signatures on the sales slips. This expert witness stated on cross-examination, "I am willing to state the same hand wrote the question (sic) and executed known samples." His qualifications as a handwriting expert were not questioned.

The evidence further showed that ten of the transactions occurred on days or times when appellant was not at work. As to four transactions on December 23, there was no direct evidence as to the time. Appellant testified that she was at work from 9:00 a. m. to 6:00 p. m., with a lunch break (as indicated on her time sheet) between

2:25 p. m. and 3:10 p. m. Other testimony showed that the sales were made by Blue Ridge Mall employees who worked no later than 6:00 p. m. on that day.

Finally, there was testimony that appellant underwent two polygraph examinations made by agreement between the state and defense counsel, the results of which were used by both the state and defense, without objection. The results of the first were inconclusive. As to the second test (which differed in that pictures of various stereo phonograph sets, including the particular model obtained by use of the credit card, were used) the examiner concluded that while he could not say positively that appellant was the signer of the slips, he could say positively that she was involved in the fraud.

It is well settled that this court, in considering the sufficiency of the evidence to support a criminal conviction, will view all the evidence, direct and circumstantial, in the light most favorable to the state, consider said evidence as true, together with all reasonable inferences which may be drawn therefrom, and will disregard all contrary evidence and inferences. *State v. Summers*, 506 S.W.2d 67, 69[1] (Mo.App. 1974); *State v. Garrett*, 494 S.W.2d 336, 337[1] (Mo.1973); *State v. Harris*, 485 S.W.2d 612, 613[2] (Mo.1972); *State v. Cobb*, 444 S.W.2d 408, 412[3] (Mo. banc 1969). Thus, review is limited to a determination of whether substantial evidence supports the verdict. *State v. Simpson*, 502 S.W.2d 451, 451[1] (Mo.App.1973). Rule 26.-01(b), V.A.M.R., provides that the findings of the court in a jury-waived criminal case will have the effect of a jury verdict, and must be reviewed in the same manner. *State v. Daniels*, 487 S.W.2d 465, 469[4] (Mo.1972).

■ The appellant argues that Rule 26.-01(b) and the decisions relating to the scope of review when considering the sufficiency of evidence to support a verdict places an "uncommon burden" on her and is contradictory to Rule 27.20(c), the so-called "plain error" rule, and in effect destroys the viability of any defense to the charge. This argument is without merit. The two rules have no real relationship to one another. The plain error rule, Rule 27.20(c), is invoked only in those instances where blatant error appears resulting in "manifest injustice or miscarriage of justice", where such error is not properly preserved for appellate review. The rule requiring the most favorable view of the evidence to support a conviction comes into play only when the question of the sufficiency of that evidence is raised on appeal. To argue, as does appellant here, that to disregard evidence unfavorable to the state on appeal renders any defense nonviable and eliminates the state's primary burden of proof is to disregard the classical and historical functions of the role of the trier of facts, on the one hand, and the appellate court on the other hand, under our criminal justice system.

■ Here, the evidence of the handwriting expert that appellant "most likely" executed the signatures, the appearance of the letter "J" on one sales slip, and its similarity to other examples of appellant's handwriting, appellant's proximity to the credit office and subsequent opportunity to use the card at the times of the transactions in question, and the opinion of the polygraph examiner that appellant did participate in the fraudulent use of the credit card constituted substantial evidence of the guilt of the defendant. This is not a case "where the state's evidence is inherently incredible, self-destructive, or opposed to known physical facts" so that to deny appellant relief would shock the sense of justice. *State v. Gregory*, 339 Mo. 133, 96 S.W.2d 47, l. c. 53 (1936); *State v. Dupepe*, 241 S.W.2d 4, 7 (Mo.1951).

Accordingly, the judgment of the trial court is affirmed.

All concur.