STATE of Missouri, Respondent,

v.

Robert WILSON, Appellant.

No. KCD 28262.

Missouri Court of Appeals, Kansas City District.

Nov. 29, 1976.

Rehearing Denied Dec. 27, 1976.

Forrest P. Carson, Jefferson City, for appellant.

John C. Danforth, Atty. Gen., Douglas G. Mooney, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Defendant was convicted of second degree burglary and stealing and was sentenced under the second offender act to imprisonment for five years on each charge, the sentences to run consecutively. He asserts basically three arguments on appeal: (1) that the trial court erred in allowing amendment of the information on the first day of trial while denying defendant's motion for continuance; (2) that the court erred in assessing the punishment itself rather than submitting the issue to the jury because there was no proof of imprisonment as required by the second offender act; and (3) the evidence was not sufficient to support the conviction.

The record shows that on the evening of Saturday, May 25, 1974, Max Trimble picked up defendant and the two drove around in Trimble's automobile. During the evening there had been some drinking, and they had picked up defendant's sister and three of her friends but had left them off by 11:00 o'clock.

According to Trimble, at about 11:30 or 12:00 o'clock, defendant told him to drive to Westminister College and park in front of Sweazy Hall so that defendant could relieve himself. Trimble parked on the street in front of the building and defendant got out, walked up to the building, and shook the front door but could not get into the building. Defendant returned to the car and instructed Trimble to drive further down the street and into the parking lot behind Sweazy Hall, which he did. Thereupon, Trimble turned off the ignition but left the lights on. Defendant grabbed the car keys and headed toward the building. Trimble saw the defendant walk down the stairs in a stairwell on the side of the building. Five or ten minutes later, defendant emerged from the stairwell with a box 2′ square, a towel and some books, put the items in the back seat of the car, gave Trimble the keys and told him to drive.

They left the parking lot and proceeded along a route designated by the defendant. According to Trimble, the two saw the

lights of an approaching car and the defendant, thinking it was the police, "told me not to stop or he'd kill me." Trimble drove straight through the stop sign as he was instructed and as their car was half-way across the intersection, the car whose lights they had seen collided with them. The impact threw Trimble's car into the ditch and partway up the bank. Defendant jumped out of the car and told Trimble to "get rid of the stuff." Trimble threw the box and then the other items ten or fifteen feet up the high bank and into an area of tall grass, brush and weeds. Defendant drove the other driver to the hospital in her car, and Trimble walked to a house down the road, where he asked the owner to summon the police. When the police arrived at the scene of the accident, Trimble told them the whole story immediately, and showed them the items in the weeds on the bank. The box, containing a stereo, along with a towel and a book, were later retrieved by the police, and were identified by Dewey Markham, a student at Westminister College, as belonging to him. He had left them in a storage room in the basement of Sweazy Hall.

Pete Busalacki, the dormitory counselor for Sweazy Hall, testified that he had locked the door to the storage room on Friday, the evening before the theft, and at that time he had seen stereo equipment in the room. He also testified that the storage room could be unlocked and opened with such common items as a key, a clothes hanger, or a plastic credit card. Although he did not know whether the outside door to the dormitory was locked, he was sure that the storage room was locked.

The only further evidence on behalf of the prosecution was four letters addressed to various students at Westminister College, one of which was postmarked Thursday, May 23, just two days before the burglary. Busalacki testified that all of the student mail at that time was delivered to Sweazy Hall. When defendant was arrested and booked, the four letters were found in his right hip pocket.

I.

The original information charged defendant with breaking into a dormitory, Sweazy Hall. On the morning of the first day of trial, the State requested and was granted leave to amend the information. The amended information charged defendant with breaking into a storage room in the dormitory, Sweazy Hall, which was identified as a dwelling house. After allowing the amendment, the court refused to grant defendant a continuance and it is the amendment coupled with this refusal which defendant claims as his first assignment of error. He contends the amended information substituted a different charge in that it alleged the offense occurred in a "different place."

Under Rule 24.02, the amendment or substitution of an information is permissible at any time before the verdict is returned if "no . . . different offense is charged and if substantial rights of the defendant are not prejudiced." The ultimate question is one of prejudice. *O'Neil v. State,* 502 S.W.2d 342 (Mo.1973). And the test of prejudice in this regard is whether a defense under the charge as originally made would be equally available after the amendment and whether defendant's evidence would be equally applicable after, as well as before, the amendment. *State v. Taylor,* 375 S.W.2d 58 (Mo.1964). Under a related rule pertaining to review of refusal of a trial court to grant a defense motion for continuance, the appellate court will not interfere unless it clearly appears that the ruling was an abuse of the sound discretion of the trial court and that the accused was prejudiced thereby. *State v. Kelly,* 365 S.W.2d 602, 606 (Mo.1963); *State v. Le Beau,* 306 S.W.2d 482 (Mo.1957).

As noted by the trial judge in ruling on the motions, both the original and also the amended informations charged defendant with burglary in the second degree. Further, the factual situation upon which the charges were based is identical. The original information accused defendant of

forcibly entering Sweazy Hall on May 26, 1974, in order to steal a stereo, and a towel deposited there; and the amended information modifies that charge only to the very minor extent of alleging that he forcibly entered a storage room inside that dormitory on the same stated date in order to steal the same described items. Under both versions of the information, the essence of the charge remained the same. See *State v. Drake,* 512 S.W.2d 166, 173 (Mo.App.1974).

■ Mention should also be made that evidence had been introduced by the State at the preliminary hearing that the stolen items had been deposited in the locked storage room. Defendant objects that this evidence should not be considered as eliminating surprise, because trial counsel (who is also counsel on this appeal) was not counsel at the preliminary hearing. Nevertheless, defendant himself heard the testimony at the preliminary hearing. Furthermore, counsel at the preliminary hearing was apparently cooperative with and informative to present counsel, as shown by the fact that present counsel called the earlier counsel as a trial witness and used his testimony of what Trimble said at the preliminary hearing, in an effort to impeach that prosecution witness.

The defendant has failed to specify any meaningful prejudice he suffered from the allowance of the amendment and refusal of the continuance, and this court sees none. The trial court did not abuse its discretion in these respects.

## II.

■ Defendant's second point alleges that the court erred in applying the second offender act, because the State failed to prove that defendant was actually imprisoned following his earlier conviction. In order to try a defendant as a second offender, the statute requires that the State plead and prove, and the court find that (1) the defendant had been convicted of and sentenced for one or more offenses punishable by imprisonment in the penitentiary, *and*

(2) that he was subsequently imprisoned, fined, paroled or placed on probation. *State v. Garrett,* 416 S.W.2d 116, 120 (Mo. 1967); *State v. Wiley,* 412 S.W.2d 485, 487 (Mo.1967). These necessary facts were pleaded in this case and evidence was adduced by the State in the form of certified court orders of defendant's conviction and sentence on the same day for the commission of two felonies, certificates of commitment to the Department of Corrections, and testimony of a Deputy Sheriff that he had transported defendant to the Department of Corrections in Jefferson City under those commitments.

■ The defendant asserts that because the records of the Department of Corrections were not introduced into evidence, the element of imprisonment was not proven. He cites in support *State v. Wiley,* 412 S.W.2d 485 (Mo.1967). That case states that such records *may* be used as proof of prior convictions under the act, but does not hold that such records are the *only* proof thereof.

In response to defendant's present objection, the trial court found that "the evidence is that he was delivered to the Department of Corrections. I think that would provide a basis for reasonable inference that the commitment had been complied with and he was in prison." Inasmuch as evidence of both conviction and imprisonment was brought forward and the trial court explicitly made findings on both points, the trial court did not err in sentencing defendant under the provisions of the second offender act.

## III.

Defendant's Points numbered III through V, that the court erred in giving Instruction No. 6 (on burglary in the second degree and stealing), that the court erred in giving Instruction No. 7 (on burglary in the second degree), and that the court erred in refusing defendant's motion for acquittal at the close of all of the evidence, are all based upon the alleged insufficiency of the evi-

dence and therefore all three arguments will be consolidated for discussion here. Specifically, defendant contends that there was no evidence: (a) that defendant was actually inside the dormitory; (b) that defendant entered the building with the requisite intent to steal; (c) that the Sony stereo music system in evidence was the same one identified by serial number in the information; or (d) that the door to the storage room was closed and locked on Saturday night.

In considering these arguments, the first factor to be considered is the appellate standard for review of sufficiency of the evidence. As stated in *State v. Scott,* 525 S.W.2d 410, 412 (Mo.App.1975):

> "It is well settled that this court, in considering the sufficiency of the evidence to support a criminal conviction, will view all the evidence, direct and circumstantial, in the light most favorable to the state, consider said evidence as true, together with all reasonable inferences which may be drawn therefrom, and will disregard all contrary evidence and inferences. *State v. Summers,* 506 S.W.2d 67, 69[1] (Mo.App.1974); *State v. Garrett,* 494 S.W.2d 336, 337[1] (Mo.1973); *State v. Harris,* 485 S.W.2d 612, 613[2] (Mo.1972); *State v. Cobb,* 444 S.W.2d 408, 412[3] (Mo. banc 1969). Thus, review is limited to a determination of whether substantial evidence supports the verdict. *State v. Simpson,* 502 S.W.2d 451, 451[1] (Mo.App.1973). . . ."

See also *State v. Wrose,* 463 S.W.2d 792, 795 (Mo.1971); *State v. Watson,* 350 S.W.2d 763, 766 (Mo.1961). Viewing the record in such a manner, the evidence appears to be sufficient with regard to each of the four specifically alleged deficiencies.

With respect to the contention that there was no evidence that defendant was inside the dormitory, defendant cites *State v. Watson,* 425 S.W.2d 123 (Mo.1968), for the proposition that evidence that the defendant was seen outside the building, when taken alone, is insufficient proof of burglary. In the case at bar, however, there is far more evidence than the defendant's mere presence near the building. There was evidence that he had tried, unsuccessfully, to enter the building by the front door, and immediately thereafter descended stairs leading to another entrance of the building, and was not seen again until he climbed the stairs five to ten minutes later carrying goods which had been locked in the storeroom inside the building. Furthermore, four letters were found on the person of the defendant during the booking process a short time later, and it was shown that the four letters, addressed to four different individuals, had been recently delivered to the building in question. From this evidence the inference can reasonably be drawn that defendant had entered the building.

With respect to the complaint that the record is devoid of any evidence of an intent to enter with intent to steal, the requisite intention can be inferred from the surrounding circumstances. *State v. Smith,* 521 S.W.2d 38, 40 (Mo.App.1975). Defendant directed Trimble to drive to the building and tried once to get into the building unsuccessfully. After finally gaining access, defendant managed to locate the storage room, open the lock, pick up stored items including a stereo, and return to the parking lot, all in the space of five or ten minutes. Such swift and systematic action amply supports the inference of an intent to steal.

Also applicable is the rule of law that unexplained possession of recently stolen goods is evidence of guilt of burglary and stealing and, if uncontradicted, is sufficient to sustain a conviction. *State v. Durham,* 367 S.W.2d 619, 621 (Mo.1963); *State v. Watson,* 350 S.W.2d 763, 766 (Mo.1961). Defendant objects to use of that principle here on the ground that his possession was joint with Trimble. When the possession proven is joint with another, there must be something else in evidence to connect the defendant with the offense. *State v. Watson, supra* at 766; *State v. Mesmer,* 501

S.W.2d 192 (Mo.App.1973). In this record, there is the additional evidence of the testimony of Trimble that he saw defendant emerge from the building—alone—carrying the stolen goods. The possession at that point was exclusively that of defendant, and that exclusivity did not become less available as the predication for an inference of theft by him merely because he later thrust possession onto Trimble. See *State v. Durham,* 367 S.W.2d 619 (Mo.1963). Defendant's possession here of the stolen property, along with the other evidence, is quite sufficient to support a finding on all elements of burglary and stealing, including that of breaking with intent to steal.

■ With respect to the alleged failure to identify the stereo system in evidence at trial by the serial number set out in the charge, the defendant argues that this made it possible for him to be charged with stealing a certain item and convicted of stealing something else. Defendant's argument misapprehends the import of the cases on which he relies. In *State v. McBride,* 366 S.W.2d 374, 377–78 (Mo.1963), the information charged that money and certain equipment was stolen; the evidence proved only that the defendant had taken clothes; the court held reversibly erroneous an instruction which permitted conviction upon a finding of intent to steal personal property "of any kind" irrespective of whether the jury believed he stole any of the four items alleged in the information. *State v. McCollum,* 377 S.W.2d 379, 386–87 (Mo.1964), the only other case cited by defendant on this point, presented the identical situation as *McBride.*

In this case, the information charged that defendant had stolen one Sony stereo, and one towel which was the personal property of Dewey Markham. The evidence showed that Dewey Markham's stereo and towel were stolen by the defendant. Markham identified his stereo and towel at trial. The police identified the stereo and towel by their initials and date marking. The stereo was present in court for physical inspection. Even with the omission of any specific reference to the serial number of the stereo at trial, identification of the goods stolen was sufficient and was consistent.

■ With respect to defendant's final contention that there was no evidence of a burglary by the defendant because there was no proof that the storage room was closed and locked on Saturday, the record fails to sustain him. Bearing in mind the fact that all reasonable inferences are to be drawn in favor of the verdict, the fact that the door was locked on Friday and that only two people had keys (the counselor who testified and the Dean of Students), the inference is certainly reasonable that the door was locked the following evening, when defendant stole the items in question.

Under the test to be applied, the evidence adduced at trial is sufficient. The court did not err in refusing defendant's motion for acquittal and in submitting the issue of burglary and stealing to the jury.

Affirmed.

All concur.