Robert WILSON, Appellant,

v.

STATE of Missouri, Respondent.

No. 62842.

Supreme Court of Missouri,
En Banc.

Jan. 12, 1982.

K. Stanley Clay, Asst. Public Defender, Columbia, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

RENDLEN, Judge.

Appealing from denial of his Rule 27.26 motion, movant contends the hearing court erred in failing to vacate his 1975 convictions for burglary second degree and stealing on his claim of "ineffective assistance of counsel." Movant, found guilty by a jury on both charges, was sentenced under the Habitual Criminal Act, § 556.280, RSMo 1969, to consecutive terms of five years on each count and those convictions were affirmed in *State v. Wilson*, 544 S.W.2d 859 (Mo.App.1976). This post-conviction motion followed and after affirmance of its denial in the Western District Court of Appeals, the cause was transferred for determination here. We decide the case as though on original appeal. Missouri Constitution, Art. V, § 10; Rule 83.09.

The single question is whether the hearing court was *clearly erroneous*, Rule 27.-26(j), in *not* determining the service rendered by appointed counsel (Forrest Carson) in defendant's 1975 trial was so ineffective as to violate defendant's constitutional right to assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution. The issue thus framed in the motion and briefs falls within the purview of the opening paragraph of our Rule 27.26, which provides:

> A prisoner in custody under sentence and claiming a right to be released on the ground that such sentence was imposed in *violation of the Constitution* ... of ... *the United States* ... may file a motion ... in the court which imposed such sentence to vacate ... the same. (Emphasis added)

In reviewing movant's contention, we note the hearing court properly measured trial counsel's performance against the standard

announced in *Seales v. State*, 580 S.W.2d 733, 736 (Mo. banc 1979):

> In order to prevail on a claim of ineffective assistance of counsel, a defendant must show [1] that his attorney failed to exercise the *customary skill and diligence* that a *reasonably competent* attorney would perform *under similar circumstances*, and [2] that he was *prejudiced thereby*. (Emphasis added)

As further explanation of the rule, this Court emphasized, "there is a presumption that counsel is competent, [citations omitted], and the petitioner must shoulder a heavy burden to override this presumption." *Id.* at 735. In addition to these general rules, the Court iterated this significant caveat:

> Finally, the exercise of reasonable judgment, even when hindsight reveals a mistake in that judgment, does' not render a lawyer negligent or lacking in competence in rendering his services. *Id.* at 735.

Elaborating the imperative that movant make a showing of prejudice as a prerequisite for post-conviction relief, the Court favorably quoted from *Reynolds v. Mabry*, 574 F.2d 978 (8th Cir. 1978), l.c. 980, as follows:

> In recent cases where the attorney's failure to provide essential services has been challenged this circuit has followed a flexible approach in requiring a petitioner to make some initial showing that his counsel's conduct may have prejudiced him in some way before a conviction will be reversed .... *Id.* at 735.

Here, the record and extensive memorandum decision of the hearing judge demonstrate an awareness and correct application of the controlling law to the facts. After referencing the rules of *Seales* and *Reynolds, supra,* the hearing court concluded:

> This Court, on all claims of ineffective assistance of counsel, expressly rejects the contentions that the conduct of attorney Carson does not measure up; but even if same were not the case, there is a total lack of evidence that Movant was prejudiced thereby.
>
> For the reasons noted, the Motion to Vacate is denied.

Against this backdrop we are called to gauge whether the court's decision was *clearly erroneous.*

### I.

Movant first contends his attorney should have attempted to disqualify the prosecuting attorney and this failure rises to a level of constitutionally ineffective assistance of counsel requiring vacation of the convictions. To this claim movant testified that in an earlier Rule 27.26 hearing relating to the 1971 convictions for sale and possession of drugs, the prosecutor in angry fashion stated he would "get" movant "sooner or later,"[1] and from that incident movant concluded the prosecutor was prejudiced and requested counsel move for his disqualification. In contrast, Mr. Carson testified,

> I don't remember that he did [request that Carson disqualify the prosecutor]. I think he probably said something to me about Gene Hamilton [the prosecutor] being prejudiced against him, and I—my reaction to that would have been, I don't know that I said it to him but I figure all prosecutors are generally prejudiced against the defendants in criminal cases, and I didn't think he was any more prejudiced than anybody else.

Mr. Carson also stated he did not proceed with the motion because he believed the prosecutor would act fairly and further the prosecutor's conduct during the proceeding bore out Mr. Carson's opinion as to his impartiality. Mr. Carson explained, by way of example, the prosecutor opened his entire file without requiring discovery motions and made reasonable plea bargain offers which movant had refused to accept.[2]

---

**1.** Movant's credibility as to this assertion seems suspect when it is learned the alleged outburst of the prosecutor that he would "get" movant occurred after the prosecutor had prevailed and movant's then post-conviction relief motion had been denied.

**2.** From our review of this record and the transcript of the criminal trial (filed in this case as

■ Section 56.110, RSMo 1969, permits applications to disqualify prosecuting attorneys on any of the following bases: (1) "interest" in the proceeding, (2) prior employment inconsistent with the duties of his office, or (3) relationship by blood or marriage to the defendant. In a proper case the court having criminal jurisdiction "may appoint some other attorney to prosecute ... the cause." The statements here attributed to the prosecutor by movant are not indicative of the type of interest that would have authorized appointment of another attorney to prosecute the cause. There is no suggestion the prosecutor acted overzealously or unfairly in the conduct of the case. As mentioned above, it was unnecessary for defense counsel to file discovery motions, as the prosecutor made his entire file available so that defense counsel knew in advance the details of the state's case and every witness's statements. It has not been shown the prosecutor had a personal interest or relationship bringing his conduct within the ambit of the statute, see *State v. Burton*, 544 S.W.2d 60, 68 (Mo.App. 1976), or influencing him to treat movant unfairly. *State v. Egan*, 272 S.W.2d 719 (Mo.App.1954). Absent evincing such a prohibited interest, a movant cannot successfully complain his trial counsel was constitutionally ineffective for failing to request the disqualification. *Brewster v. State*, 577 S.W.2d 911 (Mo.App.1979). This matter was considered and ruled by the hearing court in its memorandum as follows:

> The Court finds that while there was a discussion between Movant and his then counsel about disqualifying the prosecuting attorney, there is nothing in either this record from the evidence adduced or from the earlier trial transcript which would support such a motion; hence, a counsel cannot be held to be ineffective in this regard.

Trial counsel, properly exercising his professional judgment, balanced his client's

suggestion against the applicable law and concluded that any motion to disqualify the prosecuting attorney for the reason advanced could not succeed. Certainly the trial court's determination that counsel's assistance was not ineffective by constitutional standards was not clearly erroneous.

## II.

■ Movant next asserts a want of effective assistance of counsel because his lawyer did not request a change of venue. In this regard movant testified he asked Mr. Carson to seek the change, but Mr. Carson responded that "he was too busy with his civil practice." On the other hand, Mr. Carson testified there had been no particularly adverse publicity prior to the criminal trial, and he was of the opinion his client could obtain a fair trial in Callaway County and saw no reason for seeking a change of venue. He further testified that when his client suggested the change of venue, he replied that he "would be glad to prepare the affidavits," but expected his client to obtain the necessary signatures. The hearing court found that movant was free on bond prior to trial, was capable of undertaking the task of securing the requisite signatures, and may not now be heard to complain that counsel failed in an area chargeable to movant.

Finally, if trial counsel had tactically decided against seeking a change of venue, *though such is not the case*, that decision alone would not demonstrate incompetency unless later shown manifestly wrong. *Fitzpatrick v. State*, 578 S.W.2d 339 (Mo. App.1979); *Beeman v. State*, 502 S.W.2d 254 (Mo.1973).

The record supports the following finding of the trial court:

> Here, counsel offered to prepare the application and the requisite five affidavits, and requested that Movant secure signatures for the affidavits .... Movant was free on bond and had access to transportation, to-wit: his brother's car and

Exhibit # 1), it is patently clear the state had an unusually strong case and movant (who did not testify) had little defense of substance and

should have given serious consideration to any plea offers.

did, in fact, during the time frame under discussion, travel outside the State of Missouri . . . .

The court, denying the claim, noted that "Movant has some obligations to assist in his defense" and concluded "it cannot be said that counsel has not effectively aided and assisted his client." These findings and conclusions of the hearing court are not clearly erroneous.

### III.

■ Movant next attacks the performance of his court-appointed counsel for "failing" to request a change of judge. To this contention, movant testified that Judge Cave had presided at the time of his prior convictions (the 1971 guilty pleas for drug violations) and had been a neighbor of movant's family until he was three years of age, and movant believed Judge Cave was thereby "prejudiced or would have tried to overcompensate." Mr. Carson acknowledged that movant had on *one occasion* during preparation *suggested* that Judge Cave be disqualified, but after discussion Mr. Carson had *dissuaded* movant in this matter, giving his explanation as follows:

> He [Robert Wilson] *one time* in our trial preparation *suggested* that I disqualify, that we—or he disqualify Judge Cave, and I—we discussed it quite a bit and *I discouraged him* and said I didn't see any reason to disqualify Judge Cave because I thought he'd get a fair trial before him. And I just wasn't really for doing that, and I didn't do it. (Emphasis added).

Mr. Carson had lived in Callaway County for nineteen years and had been personally acquainted with Judge Cave for many years. Summing up, Mr. Carson testified, "I just felt like Judge Cave was a fair judge and that he would give him a fair trial." In exercising his judgment and discouraging or dissuading his client from that suggestion, trial counsel is obligated to act reasonably and give due consideration to the client's views. One of the matters Mr. Carson considered was the questionable factual basis given by his client for suggesting the judge's disqualification. Though Judge Cave had presided when movant plead

guilty on the drug charges, nothing which might have created prejudice is claimed to have transpired in connection with that proceeding. Indeed, its only significance was that Judge Cave learned of the two prior felonies; however, any judge called to try the case would necessarily learn of and be required to consider those felonies under the Habitual Criminal Act. Hence, Judge Cave's independent knowledge of the earlier convictions could not have had the weight ascribed by movant. The only other reason movant mentioned for not wanting Judge Cave was that many years before they had been neighbors. Nothing further was told Mr. Carson nor presented in the testimony concerning this matter. It was not suggested that any difficulties grew out of that long past neighborly relationship and this fact would seem to auger more for retaining Judge Cave than for disqualification. When balanced against trial counsel's knowledge of and many years familiarity with Judge Cave and the firm opinion that Judge Cave was fair and would give defendant an impartial trial, the totality of the circumstances do not indicate Mr. Carson was "constitutionally ineffective" when he "discouraged" movant in this regard. Further, it is the responsibility of counsel in rendering his professional judgment and advising his client to have considered the risks in obtaining a different judge. We are not unmindful in our position of judicial hindsight that in these pre-trial tactical decisions counsel, employing his professional judgment, must weigh the possibility of "jumping from the frying pan into the fire," and such tactical decisions should not lightly be second-guessed. The hearing court in its memorandum opinion set forth the following finding:

> While Movant states that there were several conversations, Attorney Carson recalls only one such discussion. Carson, likewise, testified that he discouraged the proposed action and that in his judgment, Movant would get a fair trial before Judge Cave. Again, this point is raised under the claim of ineffective assistance of counsel and must be considered in that

light. Clearly, an examination of the trial transcript and the sentences imposed in no way discloses any evidence of bias or prejudice on the part of the trial judge. Then concluding, the trial court stated:

> While, as noted, Movant requested that the trial judge be disqualified, it appears that counsel elected not to do so, and there is no showing from the evidence adduced that Movant, even by his own testimony, insisted on this cause [course] of action.

Additionally, the trial court found, "Movant has failed in his presentation to show or even infer such a bias or prejudice." In this connection a further apt finding appears:

> In the instant case it appears that Movant was very much aware of trial proceedings and procedure since at one point he, for whatever purpose, told counsel that if he was convicted, he would file a 27.26 alleging that attorney Carson was incompetent.

From this record two facts emerge. *First*: Movant, because of prior experience, was well versed in many of the niceties of trial procedure and post-conviction relief proceedings. *Second*: He was neither shy nor reluctant to confront his lawyer with a variety of suggestions and directions for trial preparation. Further, he was sufficiently bold in manner to threaten his attorney with a possible future claim of "ineffective assistance," and whether done in good humor or as an affront to trial counsel, mov-

ant was willing to continue thereafter to accept the hard work and receive the benefit of Mr. Carson's legal service. It is of vital importance to the instant issue that movant, at the time Mr. Carson discouraged (not refused) his suggestion concerning disqualification of Judge Cave, was dissuaded and did not insist it be pursued. He made no further mention of it, and made no statement to the court of dissatisfaction with Mr. Carson's service nor did he request that counsel be replaced because of any disagreement. He never claimed want of cooperation in the preparation or presentation of the planned defense. The record demonstrates that movant comprehended his right to address the court[3] at any time and, if he chose, to express dissatisfaction with counsel's performance. Yet, when dissuaded from pursuing the change of judge, he abandoned the matter until filing his post-conviction motion.[4]

There are no doubt endless reasons why counsel might advise a client against disqualifying a judge. This is a question within the competence of counsel's expertise, but as stated in *State v. Reid*, 114 Ariz. 16, 559 P.2d 136, 141 (banc 1976), *cert. denied*, 431 U.S. 921, 97 S.Ct. 2191, 53 L.Ed.2d 234, "While defendant in a criminal case may be entitled, as a constitutional right, to an impartial (and independent) judge, *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), he is not entitled, as a matter of right, to

---

**3.** During the testimony in this hearing Robert Wilson addressed the court stating, "Your Honor, it's my understanding I have the right to assist in my own defense. I'd like to address the Court." The court permitted him to proceed and movant gave a somewhat detailed statement to the court concerning his position in this cause.

**4.** In the opinion of The Honorable Solbert Wasserstrom, Chief Judge, Court of Appeals, Western District, affirming the trial court, this apt statement appears:

> Also to be taken into account is the factor of general undue contentiousness on the part of defendant which has led to a shotgun scatter of complaints, of which his request for the disqualification of Judge Cave was only one. Thus, in his original pro se motion under Rule 27.26, defendant set forth 37 items of

complaint with those being subdivided further in a number of sub-points. Along the same line, in that motion defendant also made demand that the Circuit Court of Callaway County "issue an ORDER disqualifying the entire court and request of the Missouri State Supreme Court to transfer to this Court a judge." Such omnibus charges go to dilute the apparent sincerity and put in doubt the seriousness of any given particular complaint. These wide-ranging complaints, the great bulk of which were ultimately abandoned, further served to supply the context for and support the trial court's finding with respect to the request for Judge Cave's disqualification, that "there is no showing from the evidence adduced that Movant, even by his own testimony, insisted upon this cause [course] of action."

any particular judge, *Palmore v. United States*, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973)." In reviewing whether *vel non* counsel's advice was wise, there is a strong presumption in favor of the competence of trial counsel which may be overcome only with proof amounting to a preponderance of the evidence. *Pickens v. State*, 549 S.W.2d 910, 912 (Mo.App.1977).

As above noted, the entire transcript of the original criminal trial was introduced as an exhibit in this cause. That record and the affirming opinion in *State v. Wilson*, 544 S.W.2d 859 (Mo.App.1976), reveal an overwhelming body of evidence leading to the jury's determination of movant's guilt, but that Mr. Carson was, nevertheless, vigorous and thorough in the defense. In the appeal which followed, Mr. Carson pursued and maintained numerous claims of error requiring the careful examination of the record and the law before affirmance in November, 1976. During oral argument here counsel for the State related that movant's counsel had acknowledged in oral argument in the Court of Appeals that Judge Cave presiding at the trial had not adversely affected the jury's deliberations. Consistent with this, movant's counsel conceded the only specific basis for prejudice now asserted lay in the consecutive sentences.

In sum, we have a client who suggested to his lawyer that he disqualify the trial judge; the lawyer evaluated this suggestion and the facts related by his client possibly demonstrating bias of the court that might warrant *the risk* of a change of judge; after considering the circumstances (while ample time was available for careful reflection and full opportunity afforded for any actions the lawyer or client might deem appropriate), the attorney dissuaded the client from requesting a change of judge; the client assented to that decision and the lawyer proceeded with preparation of his defense; accepting those services, defendant went to trial harboring the plan to later claim ineffective assistance but carefully refraining from advising the court of any problem with his attorney or requesting other counsel be appointed. These circumstances do not bespeak ineffective assistance of counsel.[5]

Finally movant has not shown prejudice sufficient to substantiate the claim. The punishment prescribed for burglary second degree was two to ten years, and for stealing in connection therewith, two to five years. Punishment assessed was well within the statutory range and in view of movant's past criminal record, as well as the nature of the crimes here involved, it cannot be said that prejudice has been demonstrated in trial counsel's actions in discouraging movant from disqualification of the trial judge.

From our review of the record and analysis of the trial court's extensive findings and judgment, we cannot say the findings, conclusions, and judgment of the trial court are clearly erroneous.

Affirmed.

DONNELLY, C. J., and WELLIVER, MORGAN and HIGGINS, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

BARDGETT, J., not sitting.

SEILER, Judge, dissenting.

I cannot agree with that portion of the opinion which excuses counsel's failure to honor defendant's request for a change of judge. It is not accurate to say, as the principal opinion assumes, that the defendant merely "suggested" to counsel that the judge be disqualified. The trial court found as a fact (see page 248 of the principal opinion and page 251 of this dissent) that "Movant requested that the trial judge be disqualified". There is ample evidence to support this finding, as seen from the testi-

5. The evidence reveals that Mr. Carson spent as many as fifty hours in investigation, research, examining the scene of the crime, reviewing the prosecutor's entire file, which included police reports and names and state- ments of witnesses, plus all other preparation necessary for the defense. This did not include the days in trial, post-trial motions, or the appeal and all the time those efforts entailed.

mony set forth below. Our review as to this factual finding is limited to a determination of whether it is clearly erroneous. Rule 27.26(j). The record shows it is not. No doubt counsel was completely sincere and honest in his judgment and appraisal that he should not accede to defendant's request, but the right to one change of judge, under our practice, is the client's not the lawyer's and, if the client makes the request, that is sufficient notice to the lawyer of what the client wants him to do. It is not required that the client say it again and again or somehow verbally italicize or forcefully emphasize his request for it to be valid.

The principal opinion is in error in treating this cause as though the trial court found as a fact that defendant did not request, but only suggested, a change of judge, which would relegate the matter to one of tactical judgment of counsel. It is on this specious premise that the opinion proceeds. What the trial judge found, as is clearly evidence from the quoted findings, is that counsel had good reasons for advising or persuading defendant not to take a change of judge, but the trial court did not find that defendant did not request counsel to take a change of judge. On the contrary, the trial court found that defendant *did* request a change of judge and our review of counsel's effectiveness must be made in light of that factual finding.

For much of the remainder of this dissent I have borrowed freely from the dissenting opinion of Judge Pritchard in the court of appeals, western district.

As Judge Pritchard points out, the record of the evidentiary hearing to which we must address ourselves is this: [Movant's testimony] "Q. Did you make any other requests of him regarding personnel or location of your trial? A. That he disqualify the Judge. Q. Who was that Judge? A. Judge Cave. Q. Why did you feel that you needed Judge Cave disqualified? A. He's been on the bench on two prior convictions of mine and was my next-door-neighbor until I was three years old. We still own the property next door to him. Q. Did you feel he might be biased or prejudiced against you in the conduct of your trial on June 3, 1975? A. I either feel he would have been, I felt, I still feel he either would have been prejudiced or was prejudiced or would have tried to overcompensate because we did own the property next door to him. Q. Did you have those feelings back prior to your trial on June 3? A. Yes, sir. Q. Did you convey them to your attorney, Mr. Carson? A. Yes, sir. Q. Do you remember when or where you made these statements to him? A. Same occasions. Q. As the prior requests? A. As all three requests, at least three or four times. Q. What was his response to those requests dealing with Judge Cave? A. Told me he just refused to do that. Said wouldn't do anything but make these people over here mad and cause them to rule against me in court on anything I brought before the Court."

Movant's appointed trial attorney testified: "Q. Did you, during the course of your representation of Mr. Wilson, have a conversation concerning the possibility of disqualifying Judge Cave from the case? A. Yes, Ma'am, I remember that. Q. Can you tell us to the best of your recollection the details of that? A. I'll tell you what I recall about the conversation. He one time in our trial preparation suggested that I disqualify, that we—or he disqualify Judge Cave, and I—we discussed it quite a bit and I discouraged him and said I didn't see any reason to disqualify Judge Cave because I thought he'd get a fair trial before him. *And I just wasn't really for doing that, and I didn't do it.* Q. Did he give you any reason for his desire to have Judge Cave disqualified? A. This is maybe—I don't know—but I think he thought Judge Cave was prejudiced against him" (emphasis supplied). Counsel went on to testify that appellant's reason for disqualifying Judge Cave was that he was prejudiced against him because he had been involved in a previous trial in which appellant had been sent to the penitentiary. Counsel's opinion was that it was not necessary to disqualify Judge Cave.

As to the disqualification of the trial judge, the trial court concluded: "The final point raised, as contained in paragraph 4, is that Movant was denied effective assistance of counsel because counsel did not move to disqualify the trial judge. Both Movant and his then trial counsel agree that they had a conversation wherein the matter of disqualifying Judge Cave was discussed. It is, likewise, undisputed that counsel was aware that Judge Cave had presided at an earlier case involving Movant. While Movant states that there were several conversations, Attorney Carson recalls only one such discussion. Carson, likewise, testified that he discouraged the proposed action and that, in his judgment, Movant would get a fair trial before Judge Cave. Again, this point is raised under the claim of ineffective assistance of counsel and must be considered in that light. Clearly, an examination of the trial transcript and the sentences imposed in no way discloses any evidence of bias or prejudice on the part of the trial judge. Likewise, Movant has failed in his presentation to show or even infer such a bias or prejudice. While as noted, *Movant requested that the trial judge be disqualified,* it appears that counsel elected not to do so, and there is no showing from the evidence adduced that Movant, even by his own testimony, insisted upon this cause [sic (course?)] of action" (emphasis supplied).

Former Rule 30.12, under which this case proceeded to trial on June 3, 1975 provided, "In any criminal case pending in any circuit court, the judge of said court shall be deemed incompetent and disqualified to hear and try said case when the judge is in anywise interested or prejudiced. * * * The judge shall be disqualified under the provisions of this Rule if, having previously given reasonable notice to the opposite party, the defendant or the prosecuting attorney shall file an affidavit stating the defendant or the state, as the case may be, cannot have a fair and impartial trial by reason of the interest or prejudice of the judge. * * *." Notable under Rule 30.12, no reason for the affidavit of prejudice of a circuit judge need be stated, and, of course, there need be no evidence to support that

affidavit. Thus, the conclusion of the trial court and this court that an examination of the trial transcript and the sentence imposed in no way discloses any evidence of bias and prejudice of the trial judge is an irrelevant conclusion. There need be no such evidence, and the facts of bias and prejudice need not even be alleged, much less proved. Upon the filing of a proper affidavit, the judge has no discretion in the matter and must disqualify himself. *State v. Bunton,* 498 S.W.2d 67, 69 (Mo.App.1973), and cases cited.

It is of no consequence that movant failed further to insist that the judge be disqualified when his counsel adamantly refused to do so, as this record shows. Rule 30.12 speaks of the right of a *defendant* to disqualify a judge, a right which may not be taken away by counsel. This record is clear that movant believed Judge Cave to be prejudiced against him because of his participation in movant's prior felony cases and their prior acquaintanceship, whatever it was.

Nor is it of consequence that movant had had prior experience in trials or that he was not shy or reticent or that he did not ask that counsel be replaced or that he knew he had the right to address the court or that his complaints are numerous or that counsel put in many hours on the case, as covered on pages 247–249 of the opinion. None of this changes the fact that it is the defendant's right to disqualify a judge, a right which may not be taken away by counsel.

The principal opinion says that the trial judge's knowledge of the two prior felonies is something which any judge called to try the case would necessarily learn of and that hence the independent knowledge of the trial judge in that respect means nothing. But that has reference to the situation where evidence of prior convictions comes in on an allegation that a defendant is a second offender and only the bare record of the conviction, sentence and imprisonment need be presented. In such cases, none of the details of the facts adduced in the prior convictions are considered. But here, *to appellant's mind,* Judge Cave's independent

knowledge of the facts as brought out in the guilty pleas taken before him as the trial judge in those cases could mean something more than the insignificance attributed to it in the principal opinion.

It is pure speculation (as there is nothing in the record to support it) that counsel may have had in mind the possibility of "jumping from the frying pan into the fire", as though if true this would constitute the basis for a tactical decision by counsel which should not lightly be second guessed. Speculation or not, however, the rule about deference to tactical decisions of defense counsel when considering claims of ineffective assistance does not apply here, as this was not counsel's tactical decision to make. The point is that defendant here, under the rule, has the personal choice and right to meet and hazard whatever other judge is assigned to adjudge his case. Counsel should properly have advised defendant of counsel's view of the lack of wisdom in taking a change of judge and explained his position, but at the same time making it clear that if defendant wanted a change of judge, counsel would honor his request. This is an area of legal representation where the authority to make the decision was exclusively that of the client, just as, for example, it is for the client to decide whether a plea should be entered. *See* Canon 7, EC 7–7 and 7–8.

*State v. Reid*, 114 Ariz. 16, 559 P.2d 136 (banc 1976), said to be somewhat similar to this case in the principal opinion, is not similar. First, there was no pre-trial request by the defendant to disqualify the judge which should have been honored by counsel. In that circumstance, the Arizona court held merely that defendant was bound by his counsel's agreement that the case be tried before a particular judge—a situation no different than that of a judge being assigned to a case under court procedure. Thus, defendant's day-of-trial motion was held not to be timely, which was the real basis for the ruling.

It is a dangerous precedent announced in the majority opinion that counsel, upon his own evaluation and conclusion from his version of facts, may overrule a request by a defendant in a criminal case to disqualify a judge, a right clearly personal to defendant.

Under the charges here, the punishment could have been two to ten years for second degree burglary, and two to five years for the stealing in connection therewith. The two sentences could have been imposed to run concurrently. Here, movant was alleged to be a second offender, and counsel must have known that the jury would pass only upon the matter of movant's guilt, and the judge would then set the sentences. Counsel should not have substituted his judgment for movant's belief of the judge's prejudice, and, in this respect, it must be concluded that his representation of movant was ineffective. The matter of choice as to disqualification of the judge was personal to movant, not his counsel, and counsel should have honored that choice.

Other claimed grounds of ineffective assistance of counsel are ruled correctly in the majority opinion, and I agree there is no basis to disturb the jury's verdict of defendant's guilt. However, I would reverse this case and remand it with directions to set aside the sentences, grant movant a change of judge other than those who presided over the original trial and this proceeding, and then resentence movant.

For the foregoing reasons, I respectfully dissent.